HUMAN DEVELOPMENT SERVICES OF PORT CHESTER, INC., Appellant, v ZONING BOARD OF APPEALS OF THE VILLAGE OF PORT CHESTER, Respondent.

Second Department, September 9, 1985

**APPEARANCES OF COUNSEL**

*Rogowsky & Rogowsky* (*Stephen Rogowsky* of counsel), for appellant.

*George A. O'Hanlon* for respondent.

**OPINION OF THE COURT**

MOLLEN, P. J.

In this CPLR article 78 proceeding, we are called upon to review a determination by the respondent Zoning Board of Appeals of the Village of Port Chester (the zoning board) denying an application for an area variance for property purchased by the petitioner Human Development Services of Port Chester, Inc., on which property the petitioner intends to operate a community residential facility for mentally disabled persons.

In June 1982, the petitioner, a New York not-for-profit corporation, entered into a contract with Cora Racanelli and Josephine Racanello to purchase their property located at 381 Irving

Avenue, in the Village of Port Chester, New York. On the property is a 2½ story, 17-room Victorian-style mansion which the petitioner plans to use as a community residence for mentally disabled persons. The mansion apparently had been operated as a transient rooming house for some 30 years.

Adjacent to the property is a smaller lot also owned by Cora Racanelli. This lot, known as 1 Elmont Avenue, originally was part of the Irving Avenue property but was conveyed to Ms. Racanelli on December 30, 1958. In February 1981, the boundary separating the two properties was adjusted by a conveyance of a 14-foot strip from the Irving Avenue property to Ms. Racanelli. The conveyance was accomplished by a "deed of correction", the purpose of which, *inter alia,* was "to correct description of premises heretofore conveyed" to Ms. Racanelli in December 1958.

Both the Irving Avenue and Elmont Avenue properties were located in a "R5" one-family residential zone, in which the village's zoning ordinance authorizes the construction of single-family residences on minimum plots of 5,000 square feet (Port Chester Code § 98-40; Schedule of Regulations for Residence Districts part 2). According to the village's code and schedule of regulations, properties in the "R5" zone are required to have at least a 30-foot-rear-yard setback and a 25-foot-front-yard setback.

Prior to the closing on the sale of the Irving Avenue property to the petitioner, the Village Attorney for the Village of Port Chester advised the sellers by letter that the sale, if consummated, "would * * * creat[e] an illegal subdivision" because, as a consequence of the aforementioned conveyance of the 14-foot strip, the Irving Avenue property had a 21.4-foot-rear-yard setback, rather than the required 30-foot-rear-yard setback. Thereupon, the sellers tendered the return of the down payment to the petitioner. However, they later agreed to complete the transaction after the petitioner commenced an action for specific performance and filed a notice of pendency against the property.

Actions were commenced by the Village of Port Chester in December 1982, and in February 1983, to enjoin the sale of the Irving Avenue property, but to no avail. Title to the property passed to the petitioner on February 15, 1983.

In addition to these actions, the petitioner was charged in the Village Justice Court, in February 1983, with several violations of the village's zoning ordinance and one violation of Real Property Law § 334, but was eventually exonerated of all

charges except for lack of sufficient parking. According to petitioner, the reason the property does not have sufficient parking facilities is that the village building inspector refuses to issue permits for the construction of parking facilities because the rear-yard setback is insufficient. We note that the petitioner was never specifically charged with violating the village's 30-foot-rear-yard setback requirement.

Two months later, at a hearing before the New York State Commissioner of Mental Health, the village sought to block the establishment of the community residence by opposing the selection of the Irving Avenue property as the site for the residence. The site, nevertheless, was approved by the Commissioner.

On November 17, 1983, the respondent zoning board conducted a hearing on the petitioner's application for an area variance.[*] The petitioner argued that the variance was necessary because the alternatives to the variance were impractical. Redrawing the boundary between the Irving Avenue property and the adjoining Elmont Avenue property, owned by one of the sellers of the Irving Avenue property, Cora Racanelli, would cause the Elmont Avenue property to be in violation of the village's ordinance in that the front-yard setback would be less than 25 feet. Furthermore, the petitioner had attempted to buy additional land but was not successful. The only other alternative is to tear down the mansion. The Village Attorney, *inter alia,* responded that the alleged hardship was self-imposed, which the petitioner emphatically denied, and suggested that the sellers and the petitioner could have provided for this situation in their contract.

The zoning board chairman expressed concern that the property would not be able to serve the group home's parking requirements. He added that: "In order to put in your parking, it would be necessary to remove the stone fence or wall and I believe that that is a damage to the environmental factors of the Village of Port Chester. I believe that an environmental study is

---

\* There are essentially two types of variances, viz., use and area (*see,* 2 Anderson, New York Zoning Law and Practice §§ 23.05, 23.06 [3d ed]). In *Matter of Consolidated Edison Co. v Hoffman* (43 NY2d 598, 606-607), the Court of Appeals explained the salient difference between the two: "An 'area' variance is one which does not involve a use which is prohibited by the zoning ordinance, while a 'use' variance is one which permits the use of land which is proscribed." According to Anderson (*op. cit.* § 23.06), "area variances involve matters such as setback lines, frontage requirements, lot-size restrictions, density regulations, and yard requirements".

A use variance is not at issue here. At the zoning board's hearing, the Village Attorney conceded that if an area variance were granted, the petitioner would not be required to make application for a use variance.

required in this particular case. The violation was known to you at the time of purchase and up to that time the lot had required rear yard and parking. Now, the house has been separated from the normal driveway and the new one would be very close to the rear of the house and hence would detract from its charm and defeat the purpose of the ordinance." In the chairman's opinion, "this particular variance is not in the best interest of the community". The other members of the zoning board apparently agreed and, without making any additional findings of fact, unanimously denied the application for an area variance.

Within the time prescribed by the applicable Statute of Limitations (*see,* CPLR 217), the petitioner instituted this CPLR article 78 proceeding seeking, *inter alia,* a judgment annulling the respondent zoning board's determination and directing that the respondent grant the rear-yard-setback variance requested by the petitioner. In addition to the arguments made before the respondent zoning board, the petitioner pointed out that since October 2, 1980, respondent had granted 34 out of 36 applications for variances for the front, rear and side-yard-setback requirements specified in the village's schedule. Nevertheless, Special Term dismissed the petition, explaining in part that,

"[though] [s]elf created hardship is not a ground, alone and by itself, mandating the denial of an area variance * * * it is one of the factors which may be considered by the Zoning Board of Appeals along with other facts in arriving at its decision. In the opinion of this court, to grant the variance requested by petitioner would be to accept as a fait accompli the willful and deliberate acts of Cora M. Racanelli, Josephine Racanello and petitioner * * *

"Petitioner's argument in substance is that, because petitioner wishes to use the property for a worthy purpose, the flaunting of the law should be overlooked. This court does not accept that argument and leaves petitioner to work out with Cora M. Racanelli whatever steps are necessary to correct the previous illegal conveyance between them. This court believes that its decision comes fully within the principles handed down by the Appellate Division, Second Department".

We disagree with Special Term and therefore reverse.

The law is well settled that local zoning boards have discretion in considering applications for variances and that judicial review is limited to determining whether the action taken by the board was illegal, arbitrary, or an abuse of discretion (*Matter of Fuhst v Foley,* 45 NY2d 441; *Conley v Town of Brookhaven Zoning Bd. of Appeals,* 40 NY2d 309; *Matter of Marasco v Luney,*

99 AD2d 492). The zoning board's determination will ordinarily be sustained if the determination has a rational basis and is supported by substantial evidence (*Matter of Fuhst v Foley, supra,* at p 444).

In order to justify the grant of an area variance, the applicant bears the burden of establishing that strict compliance with the zoning law will cause " 'practical difficulties' " (*Matter of Fuhst v Foley, supra,* at p 445; *Matter of Martirano v Zoning Bd. of Appeals,* 87 AD2d 820, *affd* 57 NY2d 867; 2 Anderson, New York Zoning Law and Practice §§ 23.33, 23.34 [3d ed]), which is a less demanding standard than the "unnecessary hardship" standard required to justify a "use" variance (*Matter of Consolidated Edison Co. v Hoffman,* 43 NY2d 598, 606). This is so because "in the usual case, a use variance will have a greater impact on the community than an area variance which does not involve a use prohibited by the ordinance" (*Matter of National Merritt v Weist,* 41 NY2d 438, 441).

The contours of the term "practical difficulties" have yet to be definitively identified. However, the Court of Appeals has instructed us that "in general, petitioner must show that as a practical matter he cannot utilize his property or a structure located thereon 'without coming into conflict with certain of the restrictions of the [zoning] ordinance' ". (*Matter of Fuhst v Foley, supra,* at p 445, quoting from 3 Rathkopf, Zoning and Planning, ch 45, § 1 [4th ed].) The basic question to be answered when reviewing an application for an area variance is "whether strict application of the ordinance in a given case will serve a valid public purpose which outweighs the injury to the property owner" (*Matter of De Sena v Board of Zoning Appeals,* 45 NY2d 105, 108).

Though no one is necessarily controlling, the following factors have been considered significant in the context of applications for an area variance: (1) significant economic injury (*Matter of National Merritt v Weist, supra,* at p 443; *Matter of Cowan v Kern,* 41 NY2d 591, 596); (2) the magnitude of the desired area variance sought since the greater the deviation the more likely it is that the impact on the community will be severe (*Matter of National Merritt v Weist, supra,* at p 441; *Matter of Consolidated Edison Co. v Hoffman, supra,* at p 606); (3) whether the "difficulty" alleged by the applicant was self-created (*Matter of De Sena v Board of Zoning Appeals, supra,* at p 108; *Goshen Shopping Assoc. v Zoning Bd. of Appeals,* 112 AD2d 140; *Matter of New York Inst. of Technology v Tanen,* 112 AD2d 164); and (4) whether the alleged difficulty may be avoided by means other

than a variance, which may be feasibly pursued by the applicant (*Matter of Wachsberger v Michalis,* 19 Misc 2d 909, 18 AD2d 921). Proof that the ordinance caused the applicant mere inconvenience, or that the property could be utilized more profitably if an area variance were granted, is ordinarily not sufficient to justify the issuance of a variance, irrespective of the application's seeming reasonableness (*see, Matter of Fuhst v Foley, supra; Matter of Martirano v Zoning Bd. of Appeals, supra;* 2 Anderson, New York Zoning Law and Practice §§ 23.38, 23.39, 23.41 [3d ed]).

Once the applicant adduces proof of significant economic injury, the zoning authority bears the burden of going forward with proof that the restriction is reasonably related to a legitimate exercise of the zoning power (*Matter of National Merritt v Weist, supra,* at p 443; *Matter of Cowan v Kern, supra,* at p 596). If the legitimate purpose of the restrictions is established, the burden of demonstrating that the area standard restrictions are not related to the public health, safety and welfare, and that the variance will not adversely affect the surrounding community is on the applicant (*Matter of National Merritt v Weist, supra,* at p 443).

In the case at bar, the petitioner purchased the Irving Avenue property which thereafter was approved by the State Commissioner of Mental Health as the site for a community residential facility for mentally disabled persons. This property, however, has been found to be in violation of the Village of Port Chester's zoning ordinance which requires, *inter alia,* a minimum 30-foot-rear-yard setback. The petitioner essentially contends that the denial of its application for an area variance has placed it in a position of having property which cannot be used without coming into conflict with the Village of Port Chester's zoning ordinance. The petitioner also contends that the denial of its application was the result of discrimination by the respondent zoning board, which during a three-year period had granted 34 out of 36 applications for yard-setback variances. We conclude that, on the basis of the record before us, and considering all the relevant factors (*see, Matter of Wachsberger v Michalis,* 19 Misc 2d 909, *supra*), the strict application of the zoning ordinance would not serve a valid public purpose which outweighs the injury to the property owner (*see, Matter of De Sena v Board of Zoning Appeals, supra,* at p 108).

As noted earlier, the zoning board chairman expressed concern that additional parking facilities would "detract from [the mansion's] charm and defeat the purpose of the ordinance". We

further note that the zoning board chairman mentioned at the hearing that "the violation was known to [the petitioner] at the time of the purchase and up to that time the lot had required rear yard and parking".

These concerns, which apparently were the primary bases for the board's action, provide insufficient reasons for denying the petitioner's application. First, we previously noted that self-created practical difficulties, as alleged herein, are not, standing alone, dispositive.

Second, the respondent zoning board of appeals has, with only two exceptions during a three-year period, consistently granted yard-setback variances, some of which were more extensive than that requested by the petitioner. In this regard, the observations of the Court of Appeals, in *Matter of Larkin Co. v Schwab* (242 NY 330, 336-337), are apt: "The mere fact that consents were granted to owners of premises somewhat similarly situated does not in itself show that consent was arbitrarily refused to this applicant. The question is not whether someone else has been favored. The question is whether the petitioner has been illegally oppressed. Exercise of discretion in favor of one confers no right upon another to demand the same decision. Unlimited discretion vested in an administrative board by ordinance is not narrowed through its exercise * * * The [board] may refuse to duplicate previous error; it may change its views as to what is for the best interests of the [town]; it may give weight to slight differences which are not easily discernible. There are, of course, extreme cases where analogy is so complete, *where grant of consent under similar circumstances has been so frequent, both before and after refusal in one instance, that inference arises that the refusal is the result of unfair discrimination and oppression.* Especially is this true where strong reason is made out for granting the consent. In such case, perhaps, the courts may call upon the dispensing power to rebut such inference" (emphasis added; *accord, Matter of Cowan v Kern, supra,* at p 595).

In the absence of a rational explanation for the denial, the frequency of granting other yard-setback variances, in some instances of far greater magnitude, suggest that the respondent zoning board engaged in a subtle form of discrimination against petitioner (*see, Rush v State Human Rights Appeal Bd.,* 108 AD2d 805, 809).

Third, the effects on population density and governmental facilities, as well as any change in the essential character of the community, will be minimal. The mansion located on the Irving

Avenue property, which the petitioner intends to use for the group home, had been operated for many years as a boarding house.

Fourth, the alternatives to an area variance appear to be impractical. Redrawing the boundary line between the Irving Avenue property and the contiguous Elmont Avenue property would cause the Elmont Avenue property to be in violation of the village's minimum front-yard setback required by the zoning ordinance. Moreover, according to the petitioner, it has been unable to purchase additional property which would bring it into compliance with the village's minimum rear-yard-setback requirement. And, the only other alternative is to raze the mansion. For all practical purposes, the petitioner will not be able to put the property to its intended use without being in conflict with the village's zoning ordinance.

Fifth, the factual predicates, such as they were, for the respondent zoning board's conclusion that a variance would not be "in the best interest of the community" are at best conclusory and find scant support in the record. As we stated in *Matter of Farrell v Board of Zoning & Appeals* (77 AD2d 875, 876-877), "[c]onclusory findings of fact are insufficient to support a determination by a zoning board of appeals, which is required to clearly set forth 'how' and 'in what manner' the granting of a variance would be improper".

Finally, the establishment of community residential facilities for mentally disabled persons is firmly rooted in this State's public policy (*see, Crane Neck Assn. v New York City/Long Is. County Servs. Group,* 61 NY2d 154, *cert denied* __ US __, 105 S Ct 60). In *Crane Neck Assn. (supra)*, the Court of Appeals, reaffirming this State's commitment to the deinstitutionalization of mentally and developmentally disabled persons, held unenforceable a covenant in a deed restricting the use of certain property to single-family homes which would have precluded the establishment of group homes for the mentally disabled. This commitment to the mentally disabled has also found substantial expression on the national level (*see, Cleburne v Cleburne Living Center,* 473 US __, 105 S Ct 3249). Thus, whatever public purpose is served by the strict application of the village's zoning ordinance, that purpose is plainly at odds with the public policy favoring the establishment of group homes such as the one proposed by the petitioner.

We conclude that, giving due consideration to all the factors present in the case at bar, including the strong public policy favoring the establishment of community residential facilities

for the mentally disabled, the respondent Zoning Board of Appeals of the Village of Port Chester abused its discretion by denying the petitioner's application for an area variance. However, we should not be understood as holding that in every case where the State's public policy concerning the mentally disabled is implicated a community's significant interest in implementing its zoning ordinances must yield. We hold only that, in the case at bar, considering all the relevant facts and circumstances, particularly the minimal impact of the requested variance, the respondent's determination does not have a rational basis and is not supported by substantial evidence. As stated by the Court of Appeals in *Matter of National Merritt v Weist* (41 NY2d 438, 443, *supra*): "the quantum of proof necessary to satisfy the [the applicant's and zoning board's] burdens varies with the magnitude of the variance sought. Where the change is slight, the more difficult it may be for the municipality to sustain its initial burden of establishing that the restriction is reasonably related to valid governmental interests. Conversely, where the change sought is great, the more difficult it will be for the applicant to demonstrate that the variance will not have a detrimental impact upon the community. Through this approach, the competing interests of the municipality and the property owner may be resolved."

In light of our disposition we need not consider the remaining issues raised by the petitioner.

Accordingly, the judgment of Special Term dismissing the petition should be reversed, the petition granted and the determination annulled, and the respondent Zoning Board of Appeals of the Village of Port Chester directed to grant the petitioner's application for an area variance.

THOMPSON, O'CONNOR and LAWRENCE, JJ., concur.

Justice O'Connor has been substituted for former Justice, now Judge Titone (*see,* Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).

Judgment reversed, on the law, without costs or disbursements, petition granted, determination annulled, and respondent is directed to grant petitioner's application for an area variance.