Board to include a "floating" industrial/mining zone in the Master Plan. The first draft of the Master Plan included a provision for such a zone. At public hearings, Robert Jones, a resident of the Town, argued strongly against such a zone. Subsequently, Jones was appointed to fill a vacancy on the Planning Board and voted to approve the final Master Plan, from which the draft provision in favor of the floating zone had been eliminated. The petitioner contends that Jones' vote should not have been allowed as he had a conflict of interests, that the board vote was thereby tainted, and that the adoption of the Master Plan by that vote is, therefore, invalid. We disagree. The record does not support the petitioner's allegation that Jones' opposition to the floating zone is based on his financial interest. Because the alleged bias involved only personal opinion rather than any financial interest in the adoption of the Master Plan, there is no basis for setting aside the Planning Board's action (see, *Webster Assocs. v Town of Webster,* 59 NY2d 220, 227; *Matter of Laird v Town of Montezuma,* 191 AD2d 986, 987; see also, *Matter of Cahn v Planning Bd.,* 157 AD2d 252, 259).

Moreover, the claim that a member of the Planning Board who owns property in the Town, might, at some point in the future, benefit from the new Master Plan on the theory that the value of his property was less likely to be adversely effected than if the original proposed floating zone remained in the plan is, at best, speculative (see, *Town of N. Hempstead v Village of N. Hills,* 38 NY2d 334, 344). Furthermore, since the property of nearly every other property owner in the Town would be similarly effected, "petitioners' argument would make all but a handful of property owners in the village ineligible to sit on the board in such matters" *(Town of N. Hempstead v Village of N. Hills, supra,* at 344; see also, *Matter of Parker v Town of Gardiner Planning Bd.,* 184 AD2d 937, 938; *Matter of Ahearn v Zoning Bd. of Appeals,* 158 AD2d 801, 801-802; *Matter of Cahn v Planning Bd.,* 157 AD2d 252, 259, supra).

Although the Supreme Court properly denied relief to the petitioner, it should have converted the CPLR article 78 proceeding to an action for declaratory judgment and declared the rights of the parties (see, CPLR 103 [c]; *Matter of Kovarsky v Housing & Dev. Admin.,* 31 NY2d 184, 192; *Matter of Laird v Town of Montezuma,* 191 AD2d 986, 987, supra). Miller, J. P., Joy, Krausman and Florio, JJ., concur.

■ In the Matter of KEVIN SHAUGHESSY et al., Respondents,

v Davɪᴅ I. Rᴏᴛʜ et al., Appellants. [611 NYS2d 281] —In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Babylon dated February 24, 1989, which, after a hearing, denied the petitioners' application for a use variance, the appeal is from a judgment of the Supreme Court, Suffolk County (Baisley, J.), entered September 9, 1991, which annulled the determination and directed the Zoning Board of Appeals to grant the petitioners' application for a use variance.

Ordered that the judgment is affirmed, without costs or disbursements.

The petitioners sought a use variance in order to build a single-family dwelling on a lot which was approximately one half the square footage required under the Babylon zoning code. After a hearing on June 23, 1988, and a six-month delay in filing its decision, the Zoning Board of Appeals of the Town of Babylon (hereinafter the Board) denied the petitioners' application, on the grounds, *inter alia,* that (1) the petitioners did not hold the property in single and separate ownership as required to obtain a variance for substandard, i.e. nonconforming, size property, (2) they failed to demonstrate economic hardship, and (3) the adverse impact on the community's health, safety, and welfare outweighed the benefit to the petitioners in developing the property. The Supreme Court granted the petition to annul the Board's findings on the ground that the determination was not supported by substantial evidence in the record as a whole. We affirm.

The record indicates that the petitioners sought the variance on the ground of "practical difficulties" in the use and development of their property *(see, Conley v Town of Brookhaven Zoning Bd. of Appeals,* 40 NY2d 309; *see also, Matter of Fuhst v Foley,* 45 NY2d 441). Thus, it was irrelevant to the consideration of the application whether the ownership of the property was single and separate, or whether the petitioners demonstrated economic hardship. The petitioners did, however, demonstrate that they could not build on the property without coming into conflict with the zoning code, since the property was substandard in size. Therefore, they sustained their burden of demonstrating "practical difficulties" *(see, Matter of Fuhst v Foley, supra).*

While a local zoning board has broad discretion in considering applications for variances, its determination will be sustained only if it has a rational basis and is supported by substantial evidence *(see, Conley v Town of Brookhaven Zoning*

*Bd. of Appeals, supra,* at 314; *see also, Matter of Slakoff v Hitchcock,* 194 AD2d 613). The Board's determination, which was purportedly based upon criteria enumerated in *Human Dev. Servs. v Zoning Bd. of Appeals* (110 AD2d 135, *affd* 67 NY2d 702), now codified in Town Law § 267-b, was not supported by substantial evidence. The only evidence presented by the Board at the June 23, 1988, hearing in opposition to the petitioners' application was a memorandum from the Town of Babylon's Department of Environmental Control recommending that the application be denied because approval might set a precedential standard for the development of other substandard parcels in the immediate vicinity of the petitioners' parcel. The memorandum indicated, generally, that the development of these substandard parcels would unduly tax community resources. However, the memorandum failed to establish that granting the petitioners' application would have a serious impact upon the community. By contrast, the petitioners presented unrebutted evidence that numerous other substandard lots in the immediate vicinity had already been developed. Thus, it was unlikely that the addition of another single-family dwelling would change the character of the neighborhood significantly. They further indicated that they had unsuccessfully attempted to purchase surrounding property in order to make their substandard lot conform to zoning requirements.

The Board also found that the petitioners' difficulties were self-created, since the petitioners had purchased the parcel with the knowledge that it was substandard in size. Although not dispositive, the fact that a difficulty is self-created may be considered in determining whether practical difficulty exists *(see, Matter of Slakoff v Hitchcock, supra).* However, the record indicates that in 1973, approximately 14 years before the petitioners purchased the property, the Planning Board had tentatively approved subdivision of a larger parcel, which created one parcel which conformed to the zoning requirements and the substandard parcel which is the subject of this petition. Although no final subdivision map was ever filed, the Town subsequently issued a building permit to the owner of the larger, conforming parcel, and a single family dwelling was built. Thus, the Town's actions effectively sanctioned the subdivision, and the Town, at least in part, contributed to the creation of the petitioners' difficulties, by allowing the creation of the substandard lot *(see, Matter of Lund v Edwards,* 118 AD2d 574). In light of the manner in which the petitioners' difficulties arose, and the lack of other evidence to support

the Board's determination, the Supreme Court properly granted the petition, annulled the determination and directed the Board to grant a use variance.

We have reviewed the Board's remaining contention and find it to be without merit. Thompson, J. P., Balletta, Pizzuto and Joy, JJ., concur.

■ In the Matter of CATHERINE A. SMITH, Deceased. ANN M. MORGAN, Respondent; EDWARD F. SMITH, Appellant. [611 NYS2d 280] —In a proceeding brought by the petitioner for the issuance of letters of administration, the appeal is from a decree of the Surrogate's Court, Nassau County (Radigan S.), dated October 16, 1991, which, *inter alia,* disqualified the appellant from receiving letters of administration or from taking in intestacy as a surviving spouse of the decedent on the grounds that he both abandoned her and failed to support her until her death.

Ordered that the decree is affirmed, without costs or disbursements.

Contrary to the appellant's contentions, we find that the record supports the Surrogate's determination disqualifying the appellant from exercising his right of election on the ground that he abandoned the decedent without justification or her consent *(see,* EPTL 5-1.2 [a] [5]; *Matter of Bennett,* 142 AD2d 578; *Matter of Prince,* 36 AD2d 946, *affd* 30 NY2d 512; *cf., Matter of Ruff,* 91 AD2d 814). Moreover, the Surrogate properly found that the appellant was disqualified from exercising his right of election on the additional ground that he failed to provide support for the decedent until her death, although he had the means and ability to do so *(see,* EPTL 5-1.2 [a] [6]; *Matter of Bennett, supra; Matter of Barc,* 177 Misc 578, *affd* 266 App Div 677). Thompson, J. P., Balletta, Pizzuto and Joy, JJ., concur.

■ In the Matter of STATE-WIDE INSURANCE COMPANY, Respondent, v WILFREDO MORALES et al., Respondents, LIBERTY MUTUAL INSURANCE Co., Appellant, et al., Respondents. [614 NYS2d 146] —In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of an uninsured motorist claim, Liberty Mutual Insurance Company appeals from a judgment of the Supreme Court, Nassau County (Christ, J.), dated June 19, 1992, which granted the petition and directed Liberty Mutual to defend its insured M.P. Auto Rental.

Ordered that the judgment is reversed, on the law, with costs payable by petitioner-respondent, the petition is denied,