■ In the Matter of ANDGAR ASSOCIATES, INC., Appellant, v. BOARD OF ZONING APPEALS OF THE INCORPORATED VILLAGE OF PORT WASHINGTON NORTH, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR to annul a decision of the respondent Zoning Board of Appeals and to direct the issuance of a building permit for construction of a two-family dwelling, petitioner appeals from (1) a judgment of the Supreme Court, Nassau County, dated June 9, 1967,

which dismissed the petition on the merits and (2) an order of said court, dated August 23, 1967, which denied its motion for leave to reargue. Judgment of June 9, 1967 affirmed, with costs. Appeal from order of August 23, 1967 dismissed, without costs. No appeal lies from such an order (*Creason* v. *Jaeger*, 16 A D 2d 838). In this proceeding petitioner seeks to compel the respondent Board of Zoning Appeals to direct the issuance of a building permit for the construction of a two-family house on a lot which is located in an area in which such a use is concededly prohibited by the present zoning ordinance. Petitioner claims a vested right to construct the house by virtue of a judgment dated January 8, 1962. The lot in question is located in a development known as Soundview Village which, prior to 1961, was zoned almost completely for industrial uses. On July 5, 1961 the Village of Port Washington North amended its zoning ordinance so as to prohibit apartment houses, two-family houses and other uses which had previously been permitted in an industrial zone. On July 7, 1961 a proceeding was commenced by the Village of Port Washington North to annul a decision of the respondent Board of Zoning Appeals, which directed the issuance of two building permits for the construction of apartment houses in a designated area of Soundview Village. Petitioner's predecessors, who were the original developers, counterclaimed in that proceeding for a declaration that they had the right to develop Soundview Village in accordance with their original plans and that the July 5, 1961 amendment, as well as any other amendments to the zoning ordinance which interfered with that right, was void. Their answer, contained in the record of that proceeding, alleged, *inter alia*, the following: (1) In 1957 and 1958 they were negotiating for and obtained options to purchase the land to be developed as Soundview Village; (2) on September 2, 1958 a comprehensive plan for the development of the area was approved by the Village Planning Board, Board of Appeals and Board of Trustees; and (3) in reliance upon that approval they (a) paid or obligated themselves to pay several million dollars for the acquisition of the lands in the area; (b) designed, laid out and installed roads, water and sewer lines to accommodate the specific uses specified in the approved plan, namely, " one-family residences, multiple residences, business and commercial buildings and industrial buildings "; and (c) incurred expenses specifically in contemplation of the construction of the apartment houses. The approved comprehensive plan divided the tract into areas for residential, apartment, shopping center and industrial uses, all of which were permitted under the zoning ordinance prior to July 5, 1961, and laid out a street pattern for the entire tract. It is undisputed that the lot involved in the instant proceeding is located in what was designated as a " residence " or " residential " area. After extensive negotiations, petitioner's predecessors and all the officials of the village entered into two stipulations which provided, in part, that the former had acquired, prior to the 1961 zoning amendment, " a vested right to develop the area known as Soundview Village * * * in accordance with the comprehensive plan of development * * * and in accordance with the provisions " of the zoning ordinance prior to July 5, 1961. The stipulations also limited the number of apartment units which could be constructed to a number which was apparently less than authorized on the approved plan. A consent judgment, dated January 8, 1962, was entered which adopted the provisions of the stipulations. Subsequently, the entire area of Soundview Village was rezoned so as to correspond to the general use designations shown on the plan. On October 1, 1962 the zoning ordinance was amended so as to eliminate two-family homes as a permitted residential use. In our opinion, the stipulations and the 1962 judgment constitute, in general, a legitimate compromise of conflicting claims and interests. Petitioner's predecessors, by their allegation

of the incurrence of expenditures in reliance upon the approval by the village of the comprehensive plan, made out a prima facie case for the relief demanded by them in the 1961 preceeding (*Telimar Homes* v. *Miller*, 14 A D 2d 586, mot. for lv. to app. den. 10 N Y 2d 709; *Elsinore Property Owners Assn. v. Morwand Homes*, 286 App. Div. 1105). We are further of the opinion that the stipulations and the 1962 judgment may be construed as purporting to vest the right to build two-family homes. It is conceded that a two-family house was a permitted use under the zoning ordinance prior to July 5, 1961. In addition, such a house was in accordance with the comprehensive plan. It is undisputed that the area in question was designated "residence" or "residential". Such a designation must be deemed to include two-family houses. Evidence as to whether or not petitioner's predecessors intended at the time to build such homes may not be considered. An instrument is to be construed in the light of the intent of the parties as expressed in the instrument (*Brainard* v. *New York Cent. R. R. Co.*, 242 N. Y. 125). However, in our opinion, the stipulations, insofar as they purport to vest such a right are void for the reason that the village did not possess the power to vest such a right. The rule in New York is that a vested right such as is involved herein inures to a property owner only where work of a substantial character has been commenced on the property (*Matter of Fox Lane Corp.* v. *Mann*, 216 App. Div. 813, affd. 243 N. Y. 550; *People ex rel. Ortenberg* v. *Bales*, 224 App. Div. 87, affd. 250 N. Y. 598; *Matter of Caponi* v. *Walsh*, 228 App. Div. 86). The cases generally require actual construction resulting in a tangible change in the land (2 Rathkopf, Law of Zoning and Planning [3d ed.], p. 57–10). In the 1961 proceeding petitioner's predecessors made no allegation that any work had been commenced specifically in the expectation of constructing two-family homes. On the contrary, as quoted above, while the answer particularized the various uses for which water and sewer lines and roads were installed, two-family houses were not mentioned. Therefore, petitioner's predecessors established no grounds to justify the vesting of such a right. Under the circumstances, the granting of this right by the village constituted a gratuitous act and an abrogation of its duty to maintain control over this facet of zoning in the area. While a municipality possesses the inherent right to compromise a claim against it, it may not, under the guise of a compromise, impair a public duty owed by it or give validity to a void claim (15 ALR 2d 1365, 1369–1370). Municipal corporations have no power to make contracts which will embarrass or control them in the performance of their legislative powers and duties (*City of New York* v. *Second Ave. R. R. Co.*, 32 N. Y. 261, 271). The entry of the consent judgment could not breathe life into that portion of the stipulations which was absolutely void (38 Am. Jur., Municipal Corporations, § 727). We hold, therefore, that petitioner does not have a vested right to construct two-family homes and that the application for the issuance of the building permit herein was properly denied. Beldock, P. J., Christ, Brennan, Rabin and Hopkins, JJ., concur.