In the Matter of PUTNAM ARMONK, INC., Respondent, v TOWN OF SOUTHEAST et al., Appellants.

Second Department, April 19, 1976

*Charles H. Velardi (Stephen J. Ventre* of counsel), for appellants.

*Reilly, Like & Schneider (Richard P. Weber* of counsel), for respondent.

MARGETT, J. The genesis of this litigation lies in the year 1955, when a predecessor to petitioner's title acquired a tract of land in the Town of Southeast, in Putnam County, with the intention of subdividing it and constructing a housing development thereon. Plans were created calling for some 500 homes on one-quarter-acre lots, with a road grid, drainage and water systems and utilities for the entire tract. In September, 1955 the town enacted a local zoning ordinance which required a minimum building lot of 10,000 square feet (a quarter of an acre), with an 80-foot frontage. At that time the owner's plans were in accordance with the zoning ordinance. Subsequently a builder named Telimar Homes, Inc. purchased the tract for subdivision and development pursuant to the original over-all plan. The fact that the land had been acquired for the development of a single integrated project had been repeatedly made known to members of the town planning board, town board and zoning commission, as well as to the town supervisor.

Telimar Homes divided the land into four sections to facilitate orderly financing, development and selling. Plat approval was obtained in August, 1955 for section 1 and in June, 1957 for section 2. Building and selling commenced on these two sections, at which time a waterworks and drainage system were built and a road grid established, to benefit the whole tract. In August, 1957 an amended ordinance was enacted which up-zoned the area to require minimum plots of 20,000 square feet (half an acre). When, in December, 1957, the builder submitted plats for sections 3 and 4, they were rejected by the planning board for noncompliance with the one-half-acre plot requirement of the amended zoning ordinance.

Telimar Homes then commenced an action to declare the invalidity of the amended ordinance as applied to its property. After a lengthy trial before a referee, it was held that Telimar Homes had a vested right to a nonconforming use of its entire tract of land and that the amendment, as applied to its property, was invalid and unconstitutional. Judgment was entered in accordance with the determination of the referee and the planning board and other defendants appealed. In

*Telimar Homes v Miller* (14 AD2d 586, 587, mot for lv to app den 10 NY2d 709), this court affirmed, stating that "the water system, roads, drainage system, model house construction and advertising were laid out and designed for the benefit of all four sections developed as a single, over-all tract" and that substantial construction had been commenced and substantial expenditures had been made on these items in partial development of all the sections. Accordingly, it was held that Telimar Homes had acquired a vested right to a nonconforming use of the entire tract.

It is undisputed that, since July, 1961, when the decision of this court in the *Telimar Homes* case *(supra)* was rendered, the developer took no further action with respect to sections 3 and 4 with the result that, today, those sections consist of completely undeveloped woodland.

During the construction on sections 1 and 2, Telimar Homes had created the Southern Putnam Water Works Company to supply the contemplated requirements of the entire development for water. In 1964 the wells utilized by the company as the source of its water failed. As a result of the ensuing drastic shortage of water, the town created the Brewster Heights Water District in order to obtain the assets of the developer's private water company and to obtain a new source of water from a New York City reservoir located within the town. The boundaries of the public water district do not encompass sections 3 and 4. It is also alleged that in past years the residents of sections 1 and 2 experienced substantial difficulties with septic tank sewage disposal systems installed by the builder because the rocky subsoils which underlie the entire tract are generally unsuitable for this type of subsurface disposal. Furthermore, the land in the development is extremely hilly, which makes it especially conducive to a high degree of water runoff, which, in turn, overburdens the existing water drainage system.

Against this background, in November, 1973 the present petitioner, Putnam Armonk, Inc., acquired title to sections 3 and 4 and took an assignment of all the former owner's vested rights under the prior decision of this court. It now intends to develop these sections and, in furtherance thereof, it caused new maps, plans and surveys to be prepared. On April 30, 1974 petitioner's attorneys requested a meeting with the planning board to discuss plat approval based upon one-quarter-acre lots under its claim of a vested right. On May 23,

1974 the planning board sent a letter to petitioner's attorneys stating that the vested rights it claimed under the decision of this court "are no longer valid, and construction of any further homes on the site are to conform to the Zoning Ord. passed by the Town Board in 1968", which ordinance contains a one-half-acre minimum lot requirement.

Petitioner commenced the instant proceeding to review the determination of the town planning board and to compel it to approve subdivision plats based upon one-quarter-acre lots. Special Term held that petitioner had validly acquired the vested rights of its predecessor in title and that the mere passage of time did not, in and of itself, spell out an intent to abandon development of the site.

On appeal, this court is not required to decide whether a vested right was obtained to develop the site on the basis of one-quarter-acre zoning; that question was settled by our decision in *Telimar Homes v Miller,* 14 AD2d 586 *(supra);* principles of collateral estoppel prevent the appellants from again raising the issue. Nor is it open to question that, once such vested rights are established, they continue for the benefit of a successor in title *(Elsinore Prop. Owners Assn. v Morwand Homes,* 286 App Div 1105; *Matter of Caponi v Walsh,* 228 App Div 86). Rather, the issue now before this court is whether the petitioner, or its predecessor in title, was divested of its right to build on one-quarter-acre lots by events subsequent to our decision in the *Telimar Homes* case. In order to determine this issue, an examination of the theory of "vested rights" is required.

It is well established that, where a restrictive amendment to a zoning ordinance is enacted, an owner will be permitted to complete construction of a structure or development which constitutes a nonconforming use because of the amendment, only where substantial construction had been undertaken and substantial expenditures made prior to the effective date of the ordinance (see 1 Anderson, New York Zoning Law and Practice [2d ed], § 6.16; 2 Rathkopf, Law of Zoning and Planning [3d ed], p 57-6; 1A Antieau, Municipal Corporation Law, § 7.133). Where substantial construction has been commenced, but expenditures thereon are unsubstantial, no vested rights accrue to the owner (see *Town of Lloyd v Kart Wheelers Raceway,* 28 AD2d 1015). Similarly, where substantial expenditures have been made but substantial construction has not commenced, no vested rights will accrue (see *Town of Hemp-*

*stead v Lynne,* 32 Misc 2d 312; *Matter of Smith v Spiegel & Sons,* 31 AD2d 819, affd 24 NY2d 920; *Matter of Fox Lane Corp. v Mann,* 216 App Div 813, affd 243 NY 550; *Matter of Caponi v Walsh, supra,* p 89; see, also, Ann 49 ALR3d 13, § 13, subd [a], p 71). The rationale behind this rule is clear. Although every zoning ordinance affects the rights of owners because it restricts utilization of the property in some manner, the right to complete construction of a nonconforming use will be sustained only where "the property interest * * * is too substantial to justify its deprivation in light of the objectives to be achieved by enforcement of the provision" *(People v Miller,* 304 NY 105, 108). In such cases the right to a nonconforming use is termed "vested" and will not be disturbed where enforcement would cause "serious loss" to the owner (see *People v Miller, supra,* p 109).

Our inquiry is directed now to an examination of the question of whether events during the passage of almost 15 years since our decision in *Telimar Homes (supra),* and 21 years since the acquisition of the property for subdivision and development, have so reduced the substantial character of the investment in, and construction on, the tract, that enforcement of the present zoning ordinance is justified. Three factors are relevant on this issue. The first is abandonment, which depends upon the concurrence of two factors, namely an intention to abandon and some overt act, or some failure to act, carrying the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment (see *City of Binghamton v Gartell,* 275 App Div 457, 460; Ann 18 ALR2d 725, § 4, pp 730-731). The second is recoupment, by which we mean the recovery by the owner of all or a part of his financial expenditures on the property without completing construction. The third is the extent to which considerations of public safety, health and welfare, which have manifested themselves over the past 15 years of experience with homes built upon one-quarter-acre plots in sections 1 and 2, indicate an overriding benefit to the public to be derived from the enforcement of the present lot size requirements.

The grounds which impelled us to find that Telimar Homes had acquired vested rights to build on nonconforming one-quarter-acre lots in sections 3 and 4 were that it had commenced substantial construction and made substantial expenditures on the water system, roads, drainage system, model

house construction and advertising to benefit not only sections 1 and 2, but the entire tract. The record before us raises issues of fact as to whether plaintiff's predecessor in title recouped or abandoned its interest in these items of expense. Thus, model homes built in the 1950's which have undoubtedly long since been sold, and advertising at that time, will of course not help sales 16 or 18 years later. It appears that Telimar Homes recouped its expenditures in the model homes when it sold them and abandoned any investment it had in advertising when it failed to carry through with the proposed development of sections 3 and 4 within a reasonable time. As for the water system, it appears that Telimar Homes' investment therein was either lost when that system failed in 1964 or was recouped when the public water district bought the assets of the water company which Telimar Homes had created to serve the area. In addition, petitioner admits that it has developed new "maps, plans, studies, and surveys" for the tract, and thus it may or may not have abandoned the former road grid, storm drains, etc.

Finally, it is alleged that the rocky subsoil of the area has proved unsuitable for subsurface sewage disposal; that central municipal sewage facilities do not exist in the area; that sections 3 and 4 lie outside the present public water district; that the source for a private water supplier is likely to fail, as it did in the other portion of the tract; and that the present overburdened storm water drainage facilities will be overtaxed by the development of the tract as originally proposed.

Accordingly, the judgment appealed from should be reversed and the proceeding remitted to Special Term for a hearing to determine (1) whether petitioner's predecessor in title, or petitioner, did indeed abandon or recoup its formerly substantial economic interest in the construction and (2) whether, if there was such an abandonment, or a recoupment of only part of the original investment, considerations of public health, safety and welfare override petitioner's remaining interest in development of the tract with one-quarter-acre lots, so as to make enforcement of the present one-half-acre zoning ordinance justifiable.

HOPKINS, Acting P. J., DAMIANI, CHRIST and HAWKINS, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated March 18, 1975, and entered in Putnam County, reversed,

without costs or disbursements, and proceeding remitted to Special Term for further proceedings in accordance with the opinion of Mr. Justice MARGETT herein.