In the Matter of ELLINGTON CONSTRUCTION CORP., Respondent, v ZONING BOARD OF APPEALS OF THE INCORPORATED VILLAGE OF NEW HEMPSTEAD, Appellant.

Second Department, December 13, 1989

## APPEARANCES OF COUNSEL

*Doris F. Ulman, Village Attorney (Frank I. Brown* of counsel), for appellant.

*Tracy, Bertolino & Edwards (John S. Edwards* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J.

Town Law § 265-a and Village Law § 7-708 both provide, in identical language, that in a municipality with both a Zoning Board and a Planning Board authorized to approve subdivisions, where an amendment to a zoning ordinance increases required lot areas or lot dimensions to amounts in excess of those delineated on an approved and filed subdivision plat showing residential lots and one or more new streets, the provisions of that amendment "shall not * * * be applicable to or in any way affect any of the lots shown and delineated on such subdivision plat * * * for a period of three years after the filing of the subdivision plat or first section thereof". An identical provision is contained in General City Law § 83-a. The question presented by this appeal is whether the foregoing provision found in the several statutes, acts to cut off vested rights acquired prior to or during the three-year exemption period. The Supreme Court, Rockland County (Rosato, J.), concluded that they did not, and we affirm.

### THE FACTS

In January 1975, Manny Apfelbaum, the predecessor in interest of Ellington Construction Corporation (hereinafter Ellington), applied to the Town of Ramapo (hereinafter the Town) for subdivision approval of a tract which encompassed some 33.522 acres. The subdivision application was for average density zoning pursuant to Town Law § 281, which, at that time, permitted the construction of 31 single-family residences on lots having a minimum area of 22,500 square feet. In consideration thereof, Apfelbaum offered to dedicate to the Town 12.105 acres (a little over one third of the total area) to be used as parkland. On April 29, 1975, the Planning Board of the Town of Ramapo (hereinafter the Planning Board) approved the subdivision as a single plat on condition that it be constructed in two sections, with Section One comprising 9 lots, and Section Two comprising 22 lots. Less than a month

later, on May 16, 1975, Apfelbaum applied for and obtained a permit from the Rockland County Highway Department for a subdivision street connection to a county road denominated New Hempstead Road. Thereafter, on July 3, 1975, Apfelbaum made an irrevocable offer of dedication of the parkland to the Town and the approved subdivision plat was filed on September 24, 1975. The irrevocable offer of dedication of parkland was recorded in the Rockland County Clerk's office in October 1975.

On June 29, 1982, the Town approved a revised subdivision plat which was filed in the Rockland County Clerk's office on October 14, 1982. It is conceded that the revised plat did not in any way modify the original layout of the lots, streets and other improvements.

The revised subdivision plat lists several conditions imposed by the Town in granting approval. Particularly, Map Note 23 requires that: "Not more than two building permits for model homes only will be issued until all public improvements except road wearing course and sidewalks are installed, approved and paid for. No building permit shall be issued for the final ten percent (10%) of lots in a subdivision, or, if ten percent (10%) be less than two (2), for the final two (2) lots of a subdivision, until all the public improvements required by the Planning Board for the Plat have been fully completed and dedicated to the Town". Map Note 29 of the revised subdivision plat further stipulates: "no building permits for section two until section one is complete". Finally, the revised plat contains a drawing depicting existing and proposed pavement widths of a "Typical Section on New Hempstead Road", which, as noted earlier, is concededly a county road. When the revised subdivision plat is reviewed in conjunction with the 1975 resolution of the Planning Board approving the original subdivision plat, a 1975 "C.D.R.C. report", and a letter of the Rockland County Planning Board dated August 16, 1983, it is clear that the Planning Board conditioned its original 1975 subdivision approval on the installation of curbs, road widening, and catch basins along New Hempstead Road.

On or about March 1, 1984, the Village of New Hempstead (hereinafter the Village) was incorporated and the petitioner's property was included within its boundaries. Some two years later, on January 2, 1986, the Village amended its zoning ordinance to increase the area requirements for average density zoning applicable to the petitioner's property, from 22,500 square feet to 35,000 square feet. Within six months of the

amendment, Ellington applied for a building permit for lot D-10, which is within Section Two of the subdivision, to permit the construction of a single-family house. On June 11, 1986, the Village Building Inspector denied the application based upon (1) Ellington's failure to complete certain public improvements, including the widening of New Hempstead Road, (2) Ellington's failure to pay the inspection fee, and (3) the expiration of the three-year period provided for by Town Law § 265-a exempting previously approved and filed subdivision plats from zoning changes.*

Ellington commenced a CPLR article 78 proceeding in the nature of mandamus, to compel the Building Inspector to issue a building permit, on the grounds that (1) it had acquired a vested right to continue building, (2) road improvements on New Hempstead Road, which is a County road, were not within the purview of the Building Inspector to mandate, and had not been required by the Planning Board, and (3) it would pay the required inspection fee as a condition to the issuance of a permit, reserving the right to challenge the fee as duplicative and excessive. However, on October 28, 1986, the Supreme Court, Rockland County, dismissed the proceeding for failure to exhaust administrative remedies reasoning that the petitioner was required to appeal the denial of the building permit to the Zoning Board of Appeals of the Incorporated Village of New Hempstead (hereinafter the Zoning Board). By order dated February 17, 1987, the court granted the petitioner's motion for reargument and upon reargument, adhered to its original determination.

Thereafter, the petitioner filed an appeal with the Zoning Board, and public hearings were held on August 12, 1987, September 17, 1987, and October 5, 1987.

At the hearings before the respondent Zoning Board, Ellington established that between 1980 and late 1983 or early 1984, seven houses were constructed in Section One of the subdivision pursuant to validly issued building permits, and all of these homes were issued certificates of occupancy. Furthermore, those improvements at the subdivision site which were constructed pursuant to the original average density subdivision plat approved by the Town in 1975, included a paved road

---

* We note that the parties argued that the exemption period commenced running from the date of the filing of the revised subdivision plat, such that the three-year exemption applicable to this case expired on October 14, 1985.

and curbs, drainage culverts, catch basins, sanitary sewers, water mains, hydrants, and underground electric and telephone facilities. In addition to the public portions of those utilities, service lines were constructed to service each and every lot in the approved subdivision, and curb cuts were created for proposed driveways. The subdivision road was constructed in Section Two after the passage of the 1986 zoning amendment, with the Village's knowledge. Ellington also established that if the subdivision were redesigned so as to comply with the Village's 35,000 square foot minimum lot area requirement, the total lot yield in Section Two would be only 14 lots instead of the 22 shown on the approved subdivision plat. Moreover, the improvements that had been made in conformance with the approved subdivision plat would then be in the wrong locations due to the increased size of the lots. Therefore, compliance with the requirements of the Village's amended zoning ordinance would necessitate new curb cuts for driveways and the relocation of utility crossings such as water and sewer laterals, electric service lines, utility transformers, hand-hold boxes and sight poles. As a result, the total cost of the changes needed to make the subdivision conform to the amended zoning ordinance was projected to be in excess of $2,200,000.

The Village's position at the hearing was essentially that, if the parkland was returned to the petitioner, application of the amended zoning ordinance would only result in the loss of 1 or 2 lots.

On or about October 29, 1987, the Zoning Board adopted a resolution confirming the Building Inspector's denial of the petitioner's application for a building permit and denied a variance for lot D-10. With respect to the denial of the permit, the Zoning Board reasoned that it could not be issued until all the public improvements in Section Two, other than the final road wearing course and sidewalks, had been completed; at the time of the adoption of the resolution, the installation of the required improvements to New Hempstead Road had not even been commenced. The Zoning Board also noted that a building permit for the subject lot located in Section Two could not be issued until permits were issued for all lots in Section One and that two of the lots in Section One were still without permits. Moreover, it determined that since a building permit could not be issued for the subject lot until all improvements for Section One were completed, the failure to

install the final road wearing courses in Section One also constituted a failure to fulfill the conditions of the subdivision approval.

The Zoning Board further decided that the three-year exemption from zoning law amendments provided by Town Law § 265-a; Village Law § 7-708; and Village of New Hempstead Zoning Law § 4.4.5, expired on October 14, 1985. Since construction of the public improvements was not complete by that date, and the application for the building permit was not filed before the expiration of the statutory exemption period or the adoption of the amendment to the Village's zoning ordinance, Ellington had no vested rights to the issuance of a building permit for the subject lot.

With respect to its denial of a variance, the Zoning Board found that the variance was substantial insofar as the subject lot lacked 7,400 of the required 35,000 square feet, a deficiency of 21%, and it lacked 30 of the required 150 feet of width, a deficiency of 20%. Furthermore, if the requested variance were granted, the Zoning Board would then have to grant area variances for the remaining 21 lots. Any hardship to Ellington could purportedly be alleviated by application to the Planning Board for resubdivision of the property utilizing some or all of the dedicated parkland, which would avoid or minimize the loss of lots.

In its petition dated November 25, 1987, Ellington alleged that the Zoning Board's affirmance of the denial of the requested building permit and its denial of a variance, was arbitrary, capricious, unreasonable, constituted an abuse of discretion, and violated its constitutional rights. Ellington alleged that it had a vested constitutional right to complete the existing subdivision, and that it had established practical difficulties and financial hardship so as to be entitled to a variance. Ellington also sought to compel the Building Inspector to issue a permit for lot D-10 and the remaining lots in the subdivision when proper applications were made.

The Supreme Court, Rockland County, agreed with the petitioner and, by judgment dated April 11, 1988, granted the petition and annulled the resolution adopted by the Zoning Board on or about October 29, 1987, as arbitrary and capricious. The court also directed the Village Building Inspector to issue a building permit for lot D-10 and for each and every other lot in the subdivision if, as, and when the petitioner made an application for them.

DISCUSSION

I.

The Zoning Board first asserts that since the enactment of Town Law § 265-a and related sections in 1960, New York State is within the group of States which statutorily define when development rights become vested, and that the Supreme Court erroneously applied the common-law doctrine of vested rights in this case. It maintains that application of the vested rights doctrine to subdivision development constitutes judicial legislation, and that the legislative history reveals that the three-year exemption statutes represent a legislative decision to diminish protection afforded developers. The Zoning Board contends that after the expiration of the statutory exemption period, vested rights to the development of a subdivision no longer exist, regardless of the extent of improvements already constructed. As a result, it asserts that the application for a building permit was properly denied.

Ellington responds that it acquired a vested right to complete the subdivision in accordance with the Town of Ramapo's earlier approval, both by virtue of the nature and extent of the improvements made in reliance thereon, and by virtue of the irrevocable dedication of parklands upon which the approval was conditioned. It asserts that the statutory enactments were never intended to supplant vested rights as viable legal doctrine applicable to subdivision approval, and that the exemption statutes merely define the time frame within which such rights may be acquired. Ellington also asserts that since the subdivision was an integrated project, individual permits were not required as a precondition to the acquisition of vested rights.

We find the Zoning Board's arguments unpersuasive, and accordingly, agree with the Supreme Court's determination that Ellington obtained a vested right to issuance of the building permit in accordance with the prior subdivision approvals.

As previously noted, Town Law § 265-a and Village Law § 7-708, essentially provide an exemption from any amendment to a zoning ordinance made within three years after the approval and filing of a subdivision plat, or the first section of the subdivision plat (see, Town Law § 265-a; Village Law § 7-708; see also, General City Law § 83-a). Contrary to the contentions of the Zoning Board, there is nothing in the legislative history of these statutes which suggests that they were in-

tended to abrogate the common-law rule as to vested rights. Therefore, we must turn to the case law for any guidance on this issue.

It has been stated, albeit in dicta, that an amendment of a local zoning ordinance constitutes, ipso facto, a revocation of any building permit issued up to that time for a use or structure prohibited by the amendment (see, Matter of Faymor Dev. Co. v Board of Stds. & Appeals, 45 NY2d 560; Matter of Fairchild Sons v Rogers, 246 App Div 555; Rice v Van Vranken, 225 App Div 179, affd 255 NY 541; see also, 4 Rathkopf, Zoning and Planning § 50.02, n 1, at 50-5; § 50.03, at 50-22, 50-23 [4th ed]). Additionally, in the absence of a statute conferring vested rights upon a subdivider, the rules relating to vested rights in subdivisions are generally the same as those relating to building permits (4 Rathkopf, Zoning and Planning § 50.03 [3] [d], at 50-39 [4th ed] [citing Town Law § 265-a]). Thus, as in the case of building permits, land in a newly improved subdivision where a plat has been filed with Planning Board approval is also vulnerable to changes in zoning regulations (2 Anderson, New York Zoning Law and Practice § 21.21, at 100 [3d ed]).

However, vested rights can be secured by a subdivider in a particular subdivision where his position has changed in reliance upon the final grant of approval, such as where site improvements were installed (4 Rathkopf, Zoning and Planning § 50.03 [3] [d], at 50-40 [4th ed], citing Matter of Putnam Armonk v Town of Southeast, 52 AD2d 10, and Elsinore Prop. Owners Assn. v Morwand Homes, 286 App Div 1105, 1106; see also, Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d 278, 284-285). On the other hand, where the amended zoning ordinance relates only to lot size or other restrictions with respect to development, and the site improvements made under the original subdivision plat would be equally useful or valuable, a vested right in the subdivision as approved could not be claimed on the basis of those improvements (4 Rathkopf, Zoning and Planning § 50.03 [3] [d], at 50-40 [4th ed]).

Early local exemption statutes variously dictated the circumstances by which vested rights could be acquired during the exemption period. For instance, the exemption might have taken the form of a grace period during which vested rights were acquired either through construction pursuant to permits granted prior to the effective date of the ordinance or amendment thereto, or, alternatively, by obtaining a permit after the effective date, but pursuant to an application filed

prior to that date (4 Rathkopf, Zoning and Planning § 50.01 [2], at 50-3, 50-4 [4th ed]; *see, e.g., Matter of Clearview Gardens Pool Club v Foley,* 19 AD2d 905, 906, *affd* 14 NY2d 809; *Rathkopf v Remsen St. Co.,* 18 AD2d 923, 924; *Matter of Glass v Zoning Bd. of Appeals,* 5 AD2d 991, 992; *Matter of Downey v Incorporated Vil. of Ardsley,* 3 AD2d 663; *Seltzer v City of Yonkers,* 286 App Div 557, 559).

With respect to these early exemption statutes, one commentator has noted that the rights granted thereunder were not, strictly speaking, vested rights, and that the exemption only conferred a right to *acquire* vested rights by subsequent construction, in accordance with the terms of the exemption provision (4 Rathkopf, Zoning and Planning § 50.02, at 50-6 [4th ed]). This observation appears to lend credence to Ellington's interpretation of the exemption statutes at issue, while contradicting the Zoning Board's position.

Of the very small number of cases which have dealt with Town Law § 265-a, only two seem to have any bearing on the case at bar. In *Freundlich v Town Bd.* (73 AD2d 684, *affd* 52 NY2d 921), the former owner obtained subdivision approval for 24 lots, and five years later the Town amended its zoning ordinance to increase the lot size requirements rendering all lots substandard. Thereafter, the petitioner created a sales map amending the lots, and forwarded it to the Town Board, which failed to properly approve it. After invalidating the map, this court noted in dictum, that the property was exempt from zoning amendments for a three-year period following the original plat approval, and since the property owners failed to avail themselves of the statutory grace period, they would not be heard to complain of hardship which resulted from the subsequent rezoning. Thus, *Freundlich* represents a situation where no substantial improvements were made after the filing of the original plat, in direct contrast to the case at bar.

*Town of Shawangunk v Goldwil Props. Corp.* (61 AD2d 693) involved an action by the Town to recover on a performance bond posted by the developer to insure the construction of the public improvements pursuant to Town Law § 277 (1). The bonding company moved for partial summary judgment to limit its liability to only that portion of the subdivision which had been developed. In affirming the denial of the motion, the court noted that the precise extent to which the construction of the improvements could proceed, "depends upon the circumstances of the individual case" and that the matter was "factually difficult since the developer's original plan cannot

be put into effect owing to a zoning change and expiration of the three-year period of exemption therefrom" *(Town of Shawangunk v Goldwil Props. Corp., supra,* at 695, citing Town Law § 265-a).

It should be noted that Town Law § 277 (1), which the *Shawangunk* court relied on, states that where a subdivision is filed in sections, no other section may be approved without the installation of improvements in the previously approved section, or the posting of a performance bond. Since *Shawangunk* involved a partially approved subdivision filed in sections, and a performance bond, the invocation of any vested rights doctrine based upon the improvements the developer made prior to the issuance of building permits was impossible. By way of contrast, Ellington's substantial improvements to the entire integrated and previously approved subdivision, which was only divided into sections with respect to construction, would appear to be factually distinguishable from *Shawangunk.*

Finally, one case which arose prior to the applicability of the exemption statutes also supports Ellington's position. In *Matter of Putnam Armonk v Town of Southeast* (52 AD2d 10, *supra),* the petitioner Putnam Armonk's predecessor in title acquired a tract in 1955, and drew up plans for 500 homes on one-quarter-acre lots. The land was thereafter sold to the petitioner, who clearly acquired it for development of a single integrated project (which was known by the Town's Planning Board, Zoning Commission, and Supervisor), but who divided the land into four sections to facilitate orderly financing, development, and selling. Plat approval was obtained for Sections One and Two in 1955 and 1957, respectively; however, in August 1957, an amended ordinance up-zoned the area to require one-half-acre lots, so that when the builder submitted the plats for Sections Three and Four in December 1957, they were rejected for noncompliance with the new zoning ordinance.

In 1961, this court had previously held with respect to the petitioner Putnam Armonk's predecessor in title that since substantial construction had commenced, and substantial expenditures had been made on the partial development of all the sections developed as a single, over-all tract, the predecessor had acquired a vested right to a nonconforming use of the entire tract *(Telimar Homes v Miller,* 14 AD2d 586). However, no further action was taken with respect to Sections Three and Four of the tract following the 1961 decision in *Telimar*

through about 1974, prompting the Town to again attempt to enforce its more restrictive zoning requirements on the grounds of abandonment or recoupment. Thus, the inquiry for the court in *Putnam Armonk (supra)*, which was decided in 1976, was whether the events during the passage of time had so reduced the substantial character of the investment and construction in and on the tract, as to justify enforcement of the more restrictive zoning ordinance requiring one-half-acre lots. The court remitted the matter for a hearing to determine whether the petitioner or its predecessor had abandoned or recouped its former substantial economic interest in construction, and whether considerations of public health, safety, and welfare, took priority over the petitioner's remaining interest in development.

It should be observed that *Putnam Armonk (supra)* apparently had its origins prior to the effective date of Town Law § 265-a and related statutes creating the three-year exemption, since these statutes are not referred to in the decision. Consequently, *Putnam Armonk* does not address the issue of whether the common-law concept of vested rights continued after the 1960 statutory enactments. Moreover, since the *Putnam Armonk* decision only recognized a vested right in the developer to obtain *plat approval* based upon improvements in related sections, it may be the very type of situation which the exemption statutes were intended to address. Indeed, the language of *Shawangunk (supra)* provides some evidence of such an intent.

However, the facts of the case at bar provide more compelling support for application of the vested rights doctrine than do *Putnam Armonk* and *Shawangunk (supra)*. Here the entire plat approval had already been granted, and substantial improvements had already been made in related sections in reliance upon that approval, all prior to the expiration of the three-year exemption period and the amendment of the ordinance.

The exemption periods provided for in Town Law § 265-a and Village Law § 7-708 do not dictate the circumstances by which vested rights may be acquired, and they seem to presuppose that the developer has merely filed a subdivision plat. Nor do those statutes specifically state that a building permit must be obtained within the three-year period. Thus, they do not exclude the concept that improvements made during that period could give rise to vested rights. The 1986 amendment to the Village's ordinance merely authorizes the issuance of a

building permit for a nonconforming lot which meets the requirements of Village Law § 7-708. The exemption statutes are silent as to when a right is vested, and this may have been intended to permit application of general common-law principles to factual situations that give rise to vested rights.

The situation presented by this case is somewhat unique since many permits were issued, and improvements completed for Section One, between the time of the filing of the first subdivision plat and the filing of the second revised subdivision plat, while other improvements were made after the filing of the second revised subdivision plat. In any event, the project was "sectionalized" so that compliance or noncompliance with the conditions pertaining to Section One would have a "domino effect" upon implementation of improvements in Section Two. The record reveals that substantial improvements in Section Two were made prior to, during, and after the exemption period, and the fact that these improvements were made in Section Two supports Ellington's assertion that the Town considered Section One to be complete notwithstanding the failure to install the final wearing course or to make the improvements to New Hempstead Road.

Thus, while the Town Law § 265-a and Village Law § 7-708 create a three-year exemption period from the date of the filing of a subdivision plat in which to obtain vested rights, these statutes were not intended to abrogate vested rights which had accrued up to that time by virtue of substantial improvements. In light of the completion of the work in Section One, and the installation of substantial improvements in Section Two on the assumption that the Section One improvements were complete, the Supreme Court properly found that the substantial improvements made prior to the expiration of the three-year exemption period conferred a vested right to obtain building permits in accordance with the provisions of the former zoning ordinance.

## II.

■ In addition, Ellington's predecessor in interest clearly made an irrevocable dedication of parkland to the Town of Ramapo on July 3, 1975, as recited in the September 1987 resolution of the Town assigning its interest in the parkland and other dedicated areas to the Village, and as evidenced by the map notation expressly stating that the offer of dedication was irrevocable (see, Town Law §§ 277, 278; *Riegert Apts. Corp.*

*v Planning Bd.,* 57 NY2d 206; 2 Anderson, New York Zoning Law and Practice § 21.18, at 94-95 [3d ed]). Contrary to the Zoning Board's assertions, the dedication did not constitute a continuing offer of dedication which the Town or Village could accept at any time prior to revocation by Ellington's predecessor in interest *(cf.,* Town Law § 278 [1]). The facts of this case clearly reveal a dedication by Ellington's predecessor in interest, and acceptance by the Town and Village *(cf., Foreal Homes v Incorporated Vil. of Muttontown,* 128 AD2d 585, 586-587; *Village of Croton-On-Hudson v County of Westchester,* 38 AD2d 979, 980, *affd* 30 NY2d 959).

In *Ward v City of New Rochelle* (20 Misc 2d 122, *affd* 9 AD2d 911, *affd* 8 NY2d 895), the New Rochelle School District requested in 1956, that the plaintiff convey 13.3 acres of her property to be used for the erection of an elementary school and recreational area. The plaintiff was willing to make the gift on the condition that the school parcel conform to the development of her over-all property, which meant development in accordance with a 1955 zoning law amendment requiring 10,000 square foot lots. Thereafter, the plaintiff attended the Planning Board meeting which approved the preliminary plat plan with several conditions. After the plaintiff conveyed the school site, the Planning Board met and deleted one condition, disapproved the plat plan, and rezoned the plaintiff's property to require 20,000 square foot lots. The Supreme Court determined that upon approval of the plat plan and the conveyance, the plaintiff obtained a vested right to develop her remaining land in accordance with the plan as previously approved. The court noted that the case was unique and more compelling than normal vested rights cases since there was a permanent parting with valuable land with no chance of recoupment, whereas, in the normal case, expenditures are expected to be recouped by the sale of lots. Finally, the court determined that the city's plan to up-zone the area was not a well-considered plan adopted for the general health, safety and welfare of the whole city *(Ward v City of New Rochelle, supra).* While there was evidence of bad faith on the part of the Planning Board in *Ward,* the case clearly provides support for the proposition that Ellington's vested rights arose prior to the expiration of the exemption by virtue of the irrevocable conveyance of parkland made by its predecessor.

It should also be pointed out that neither the Village nor the Town can reconvey parkland which has been irrevocably dedicated for recreational use. Dedicated park areas in New

York State are impressed with a public trust, and their use for other than park purposes, either for a period of years or permanently, requires the direct and specific approval of the Legislature, plainly conferred *(see, Matter of Ackerman v Steisel,* 104 AD2d 940, 941, *affd* 66 NY2d 833; *see also, Miller v City of New York,* 15 NY2d 34; *Stephenson v County of Monroe,* 43 AD2d 897; 16 Opns St Comp, 1960, No. 60-545, at 292). Thus, the Zoning Board's claim that such parkland could be reconveyed to Ellington, who did not originally convey the land, and that this reconveyance would permit Ellington to accomplish a redesign of the subdivision in conformity with the amended zoning ordinance is untenable, and would violate the public trust doctrine in the absence of special State legislation.

As a result, it is clear that the petitioner acquired vested rights both through the conveyance of parkland by its predecessor in interest, and through its own substantial expenditures made prior to, during, and after the expiration of the exemption period *(cf., Matter of Putnam Armonk v Town of Southeast,* 52 AD2d 10, *supra; see also, Matter of Andgar Assocs. v Board of Zoning Appeals,* 30 AD2d 672; *Elsinore Prop. Owners Assn. v Morwand Homes,* 286 App Div 1105, *supra; Matter of Caponi v Walsh,* 228 App Div 86; *Ward v City of New Rochelle,* 20 Misc 2d 122, *supra).*

## III.

■ Furthermore, Ellington clearly established that the practical difficulties it would face in the event it were forced to redesign the subdivision warranted the issuance of an area variance for the subject lot *(see, Matter of Townwide Props. v Zoning Bd. of Appeals,* 143 AD2d 757, 759; *Matter of Friendly Ice Cream Corp. v Barrett,* 106 AD2d 748, 749). Although Ellington failed to adduce evidence of the acquisition cost of the land in support of its claim of significant economic injury, this factor is not by itself controlling, and is but one of many factors to be considered *(see, Matter of Snyder v Scheyer,* 153 AD2d 630; *Human Dev. Servs. v Zoning Bd. of Appeals,* 110 AD2d 135, 139, *affd* 67 NY2d 702). Thus, once Ellington established that a redesign within existing parameters of the subdivision would occasion the relocation of virtually every improvement made in Section Two, with attendant consequential "out-of-pocket" costs and delay, it was incumbent upon the appellant to establish that strict application of the

ordinance would serve a valid public purpose which outweighed Ellington's injury (see, Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 313; Matter of Fuhst v Foley, 45 NY2d 441, 445; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 455-456; Matter of Fulling v Palumbo, 21 NY2d 30, 33-35; Matter of Townwide Props. v Zoning Bd. of Appeals, supra). The appellant wholly failed to meet its burden of proof in the face of Ellington's evidence.

## IV.

In addition, we note that the Supreme Court failed to address the issue concerning Ellington's noncompliance with the conditions that had been imposed by the Planning Board as a condition precedent to the issuance of building permits. The testimony at the hearings reveals that all of the parties were confused about the sequence in which the conditions contained in Map Notes 23 and 29 were to be fulfilled. The evidence supports Ellington's position that the Town had previously determined that there was compliance with all of the conditions, and that the Town had considered Section One of the subdivision to be complete.

Since there is no longer any impediment or confusion concerning how the wearing course should be installed, and Ellington has also indicated its willingness to pay the inspection fee requested by the Village while reserving its right to seek reimbursement of the inspection fee previously paid to the Town, the Supreme Court's judgment is modified to require completion of these conditions.

■ Finally, General Municipal Law § 239-k provides that no building permit shall be issued or approved by a municipality where a proposed building shall have frontage on, access to, or be otherwise directly related to any existing or proposed right-of-way located on the county map, unless the Building Inspector notifies the county authorities who shall within 10 days, report to the municipality concerning whether the permit application is approved, disapproved, or approved subject to stated conditions, based, inter alia, upon the effect of traffic (see, General Municipal Law § 239-k; cf., Village Law § 7-736; Town Law § 280-a). In this case the Village building inspector summarily denied Ellington's application for a building permit for the subject lot in Section Two, without forwarding a copy of the permit application to the appropriate County authorities, in violation of General Municipal Law § 239-k (see

*also,* Highway Law § 102 [15]; § 136; *Token Carpentry v Hornik,* 92 AD2d 868, 869-870; *Matter of Ringewald v Struppmann,* 14 AD2d 547, 548; *cf., Matter of Coates v Planning Bd.,* 58 NY2d 800, 803; *Matter of Pearson Kent Corp. v Bear,* 28 NY2d 396, 398-399). As a result, if and when Ellington submits building permit applications for the two lots located in Section One of the subdivision as well as for those in Section Two, they should be referred to the proper county authorities in conformity with General Municipal Law § 239-k. Upon approval by the appropriate county authorities, the respondents are directed to issue the requested building permits to the petitioner.

We have considered the parties' remaining contentions and find them to be without merit.

SPATT, J. P., SULLIVAN and HARWOOD, JJ., concur.

Ordered that the judgment is modified, on the law, by deleting the following language "the Village Building Inspector is hereby directed to forthwith issue petitioner a building permit for Lot D-10 and for each and every other lot in the subdivision if, as, and when petitioner makes an application for same", and substituting therefor the following language "the Village Building Inspector is to issue a building permit for Lot D-10 and for each and every other lot in the subdivision if, as, and when the petitioner makes an application for same on condition that the petitioner: (1) install the final wearing course in Section One of the subdivision in accordance with the letters of the Engineer of the Village of New Hempstead respectively dated September 3, 1987, and September 17, 1987; (2) pay the inspection fee requested by the Village of New Hempstead; (3) submit applications for building permits for the remaining two lots in Section One of the subdivision; (4) forward the building permit applications for the two lots in Section One and for Lot D-10 in Section Two to the appropriate County authorities for their approval pursuant to the General Municipal Law § 239-k, and obtain the County authorities' approval of the application(s)"; as so modified, the judgment is affirmed, without costs or disbursements.