■ In the Matter of SCHOONMAKER HOMES—JOHN STEIN-

BERG, INC., Appellant, v VILLAGE OF MAYBROOK et al., Respondents.—Crew III, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Hickman, J.), entered March 20, 1990 in Orange County, which dismissed petitioner's application, in a combined action for declaratory judgment and proceeding pursuant to CPLR article 78, to review a determination of respondent Zoning Board of Appeals of the Village of Maybrook finding that petitioner had no vested right to develop its property in accordance with a prior zoning law and declared Local Laws, 1986, No. 9 of the Village of Maybrook valid and constitutional.

In 1965 a tract of land in the Village of Maybrook, Orange County, consisting of 55 acres was owned by Fitt-Mifsud, Inc. and Philip Tondoi. Sometime during or before 1971, the tract of land was sold to Goldmore Developers, Inc. Goldmore Developers later sold the tract of land to Waverly Estates, which sold it to petitioner. The tract of land is entitled "Country Club Heights" (hereinafter the subdivision plat) and includes a portion of land called the "Garden Apartments site". On November 30, 1971, petitioner proposed a single over-all plan for the subdivision plat which contemplated construction of 120 multiple dwelling units on the Garden Apartments site and 58 units as single-family dwellings and 278 units as town houses on the remainder of the property. On October 18, 1972, the Planning Board of respondent Village of Maybrook granted final approval to petitioner's subdivision plat which included blocks, lots and sites and divided the plat into four sections.

Section one of the subdivision plat contained the Garden Apartments site and was filed January 12, 1973. The remaining three sections of the plat were filed May 16, 1974. In 1973 and 1974 the Village's zoning ordinance required that the density for apartments be a minimum of 2,500 square feet per unit with a minimum lot area for such use of 5,000 square feet. In March 1974, the Planning Board approved a site grading and utility plan for the Garden Apartments site on the subdivision plat. In July 1974, a building permit was prematurely issued for 12 units on the Garden Apartments site. In August 1974, a revised site grading and utility plan for the Garden Apartments site was submitted by petitioner depicting 126 units on the site. At some point in 1974, the Planning Board gave site plan approval for the Garden Apartments site for construction of 126 units on 7.24 acres. On November 7, 1986, petitioner submitted an application for

building permits for 24 units on the Garden Apartments site. On November 10, 1986, the Village amended its zoning ordinance by increasing the minimum apartment density from 2,500 to 5,000 square feet and increasing the minimum lot area for such purpose from 5,000 to 200,000 square feet. The effect of that amendment was to permit petitioner to construct a maximum of 63 multiple dwelling units instead of the contemplated 126 units permitted by the prior zoning requirements. The next day the Village's Building Inspector denied petitioner's permit applications on the ground that there was no site plan approval by the Planning Board. Petitioner appealed the Building Inspector's determination to respondent Zoning Board of Appeals (hereinafter ZBA) seeking an interpretation of the amended zoning ordinance. Petitioner asserted that it had vested rights prior to the 1986 zoning ordinance amendment under the single integrated project theory. After two public hearings, the ZBA determined on March 31, 1989 that petitioner had no vested rights and was subject to the new zoning ordinance.

Thereafter, on April 28, 1989 petitioner commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking to annul the ZBA's determination and to declare the amended zoning ordinance unconstitutional and invalid. After issue was joined, respondents moved to dismiss the petition/complaint and petitioner cross-moved for discovery, a stay of the article 78 proceeding and a continuance pending discovery. Supreme Court granted respondents' motion and denied petitioner's cross motion. This appeal by petitioner ensued.

At the outset it should be noted that respondents' motion was procedural in nature, having been directed at the legal sufficiency of petitioner's pleadings. That motion was converted by Supreme Court to one for summary judgment without notice to petitioner. Because the parties treated the motion as one for summary judgment in their briefs on appeal and the conversion issue has not been raised, there is no reason for us not to treat the motion as such (see, Schnur v Mehl, 75 AD2d 890).

Before addressing the issues raised on this appeal, we must review the development of the law as it relates to vested rights and the single integrated project theory. In general, before the enactment of Village Law § 7-708 (2)* questions

---

* Village Law § 7-708 (2) was intended to encompass restrictive zoning ordinances enacted within three years after the approval and filing of a

concerning the rights of owners of approved subdivisions to complete their subdivisions in accordance with the regulations existing at the time of the approval were governed exclusively by the common-law rule pertaining to vested rights. Under the vested rights doctrine, where a more restrictive zoning ordinance is enacted, an owner will be permitted to complete a structure or development which an amendment has rendered nonconforming only where the owner has undertaken substantial construction and made substantial expenditures prior to the effective date of the amendment (see, Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 77 NY2d 114, 121-122; Matter of Putnam Armonk v Town of Southeast, 52 AD2d 10, 14). In particular, vested rights were extended to existing and in-progress structures and developments, but were not extended to new, additional or different structures and developments (see, Matter of Rogers v Department of Hous. & Bldgs., 5 AD2d 784, 785; see also, Matter of Todem Homes v Board of Zoning Appeals, 74 AD2d 908, affd 52 NY2d 972). Moreover, an owner could acquire vested rights in a development under the single integrated project theory. Pursuant to that theory an owner might acquire vested rights to a site where substantial construction had not been undertaken where the site is but a part of a single project and where, prior to the more restrictive amendment, substantial construction had been commenced and substantial expenditures had been made in connection with other phases of the integrated project which also benefited or bore some connection to the affected site (see, e.g., Telimar Homes v Miller, 14 AD2d 586, lv denied 10 NY2d 709; Elsinore Prop. Owners Assn. v Morewand Homes, 286 App Div 1105). Lastly, an owner who has acquired vested rights may be divested of such rights where there is abandonment, recoupment or an overriding benefit to the

---

subdivision plat or the first section of the subdivision plat (see, Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 152 AD2d 365, 372, affd 77 NY2d 114). In the instant proceeding/action, petitioner's subdivision plat was approved October 18, 1972 and the first section of the approved plat was filed January 12, 1973. In 1972 and 1973, the Village's ZBA and its Planning Board were both vested with authority to approve subdivision plats. On November 10, 1986, the Village amended its zoning ordinance increasing the minimum apartment density from 2,500 square feet to 5,000 square feet and a minimum lot area from 5,000 square feet to 200,000 square feet. The Village did not enact a more restrictive zoning ordinance relating to minimum density and minimum lot area within three years after approval and filing of section one of petitioner's subdivision plat. We, therefore, find that Village Law § 7-708 (2) is not applicable; rather, the common-law rule for vested rights is applicable in this combined proceeding/action.

public to be derived from the enforcement of the amended zoning ordinance *(see, Matter of Putnam Armonk v Town of Southeast, supra,* at 15).

The threshold issue before this court is whether, under the single integrated project theory, petitioner acquired vested rights to construct its Garden Apartments units in accordance with the Village's zoning ordinance in existence prior to November 10, 1986. It is clear that petitioner acquired 55 acres of land for development, proposed a single over-all plan for all of the acreage, communicated its intent for the proposed project to the Village's Planning Board and obtained final approval for its subdivision plat which was filed. The Village admits that (1) there is ongoing construction of some 37 town houses and nine single-family dwellings, (2) there has been substantial completion of about 239 town houses and 49 single-family dwellings, and (3) the building costs associated with the development of the subdivision plat exceed $14 million. The record reveals that the Garden Apartments site has been developed to the extent of installing a roadway base and constructing water, sewage and drainage systems. The subdivision plat was divided into four sections, was developed and is being developed according to petitioner's proposed project, and there has been substantial construction undertaken and substantial expenditures made in furtherance of the completion of the development.

While no construction has yet been undertaken with regard to the Garden Apartments units, respondents admit that there have been expenditures for infrastructure in the amount of $657,000 which include, *inter alia,* sanitary, sewer, water and storm water systems as well as roads, all of which benefit the Garden Apartments site. Additionally, petitioner has expended $59,737 for such things as site grading and utility plans, interest on improvement bonds and general subdivision improvements, all of which bear some connection to the affected site. Based upon those facts, largely uncontested by the parties, we find, as a matter of law, that petitioner has acquired vested rights to develop its Garden Apartments site in accordance with the Village's zoning ordinance in effect prior to November 10, 1986.

We must now determine whether events occurring during the passage of some 20 years since the acquisition of the property for subdivision and development have so reduced the substantial character of the investment in and the construction on the tract that enforcement of the amended zoning ordinance is justified *(see, Matter of Putnam Armonk v Town*

*of Southeast,* 52 AD2d 10, 15, *supra).* As previously noted, divestiture may occur as the result of abandonment, recoupment or overriding considerations of public safety, health and welfare, which have manifested themselves over the past 20 years *(see, supra).* The ZBA determined that petitioner abandoned the Garden Apartments project in which determination Supreme Court concurred. The question is whether there was substantial evidence to sustain such a finding *(see, Matter of Fuhst v Foley,* 45 NY2d 441). At the public hearings, a number of residents of the town houses adjacent to the Garden Apartments site testified that they were told by petitioner that the site would be used for park land or for commercial purposes. Furthermore, advertising for the project always referred to single-family homes and town houses and never referred to apartments. Additionally, petitioner sent a letter to the Village Board of Trustees in November 1986 in which it was stated, "We are not locked into any firm number of units. In fact, we are really not interested in apartments in the traditional concept. We are interested in affordable condominiums for sale." Petitioner testified that there was never an intention to abandon development of the apartments, and in support of that proposition it demonstrated that it has been paying a water assessment of $125 against each of the proposed 126 apartment units for approximately 15 years, totaling in excess of $230,000. However, there was also proof that upon the original assessment of $108,000 by the Village, it was agreed that petitioner's assessment could be allocated unevenly against the housing units and it was petitioner who determined to allocate an assessment of $125 against its proposed Garden Apartments units. Here there was a conflict in the testimony at the public hearing and, from the evidence recited above, there were conflicting inferences which may have been drawn therefrom. The duty of weighing the evidence and making the choice between conflicting inferences rests solely with the administrative agency, and courts may not weigh the evidence or reject the choice made where room for choice exists *(see, Matter of Stork Rest. v Boland,* 282 NY 256, 267). Accordingly, we find that there was substantial evidence to support a finding of abandonment.

Moreover, there is record evidence that the town houses in the plat were designed and constructed to maximize the total number of housing units. Over the ensuing years, the proximity of the town house units to one another has created various problems relating to density, open space, traffic, parking and difficulty in providing firefighting services in times of emer-

gency. Like the town houses, the Garden Apartments site was designed to maximize the total number of housing units. Like the town houses, the proximity of those units to one another will create problems relating to density and open space, and may pose difficulty in providing emergency services. Additionally, construction of the units as contemplated will exacerbate existing traffic and parking problems. There is substantial record evidence, therefore, that the new zoning ordinance will minimize those problems and provide an overriding benefit to the public to be derived from the enforcement thereof. Accordingly, we find that Supreme Court was justified in dismissing the petition.

Petitioner next contends that Supreme Court improperly declared the amendment to the zoning ordinance constitutional. "[Z]oning ordinances * * * enjoy a strong presumption of constitutionality and if there is a reasonable relation between the end sought to be achieved and the means adopted to achieve it the regulation will be upheld" *(Matter of Town of Islip v Caviglia,* 73 NY2d 544, 550-551). Additionally, petitioner bears a very heavy burden of demonstrating unconstitutionality beyond a reasonable doubt and it is only as a last resort that we should strike the legislation on that ground *(see, Stepping Stones Assocs. v City of White Plains,* 100 AD2d 619, 620, *affd* 64 NY2d 690, *cert denied* 471 US 1066). Petitioner claims that the 1986 amendment here was enacted without the benefit of a comprehensive plan and, therefore, that improper means were used to achieve a legitimate end *(see,* Village Law § 7-704). There is no doubt that an amendment to a zoning ordinance must be undertaken pursuant to a comprehensive plan and our inquiry is whether the original plan required amendment because of the community's change and growth and whether the amendment is calculated to benefit the community as a whole *(see, Asian Ams. for Equality v Koch,* 72 NY2d 121).

Examination of the available and relevant evidence in this case demonstrates that the Village considered numerous conditions in amending the zoning density requirements in order to benefit the community and to meet "the increasing encroachments of urbanization on the quality of life" *(Matter of Town of Islip v Caviglia, supra,* at 550). Since 1980, complaints have been received concerning flaws and deficiencies in the development plan in question, specifically concerning traffic backup and parking overflow into the streets. While the Village tried to deal with those complaints, it became clear that legislation was required and, consequently, studies were

undertaken before adoption of the amendment. Additionally, the resolution of negative declaration under the State Environmental Quality Review Act (ECL art 8) details the considerations for land use planning, open space/aesthetics, traffic, municipal services and economic considerations. Based upon all the record evidence, Supreme Court was well within its bounds to find the 1986 amendment to the Village's zoning ordinance constitutional.

Weiss, J. P., Mikoll, Yesawich Jr. and Harvey, JJ., concur. Ordered that the judgment is affirmed, without costs.