**FIGHTING FINEST, INC., et al., Plaintiffs,**

v.

**William BRATTON, current Commissioner, New York City Police Department; Raymond KELLY, former Commissioner, New York City Police Department, Defendants.**

No. 95 Civ. 1060 (LBS).

United States District Court, S.D. New York.

Sept. 6, 1995.

---

Kliegerman & Friess, New York City (Rosemary Carroll, of counsel), for Plaintiffs.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (David Drueding, of counsel), for Defendant William Bratton.

SAND, District Judge.

Plaintiffs in this action are Fighting Finest, Inc. ("FFI"), a not-for-profit corporation established to organize and operate an amateur boxing team composed of New York City police officers; current and retired New York City police officers who are members of FFI and who wish to continue to box under its aegis; and Carl Schroeder, President of FFI. Defendants are William Bratton and Raymond Kelly, current and former New York City Police Commissioner, respectively. Before the Court is a motion by defendant Bratton to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons set forth below, we grant the motion and dismiss the complaint as to both defendants.[1]

---

1. In opposing Bratton's motion, plaintiffs have submitted several items outside the pleadings—an affidavit by plaintiff Daniel O'Leary and three accompanying exhibits—and have asked the Court to convert Bratton's motion to a motion for summary judgment. Bratton, through counsel, has stated that there is no need to convert his motion to one for summary judgment because he is prepared to treat the affidavit and exhibits as part of the complaint and to assume as true the facts stated in them. *See* Transcript of Oral Proceedings, dated June 1, 1995 ("Tr."), at 3–4. In light of Bratton's concession, we will treat his motion as a Rule 12(b)(6) motion.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), we accept as true the factual allegations of the complaint, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), and grant the motion only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The facts alleged in plaintiffs' complaint are as follows:

In or about 1983, plaintiff Carl Schroeder organized a boxing team for New York City police officers. Complaint, dated January 27, 1995 ("Compl."), ¶ 30. The primary purpose of the team was to conduct boxing matches with boxing teams of other New York City agencies and other police departments in the United States and Europe. *Id.* ¶ 31. Another purpose of the team, much relied upon by plaintiffs in opposing the instant motion, was to enhance the public image of police officers and the police profession by having police officers participate in the sport of amateur boxing. *See* Exhibit 1 to the Affidavit of Daniel O'Leary, dated May 25, 1995 ("O'Leary Aff."), ¶ 3.

In 1984, Schroeder requested the New York City Police Department ("NYPD") to officially recognize his boxing team and to permit it to use a logo incorporating a police shield and to post notices of scheduled matches on NYPD premises, including the Police Headquarters building, police precincts, and police command locations. Compl. ¶ 32. Former Police Commissioners Benjamin Ward and Lee P. Brown granted Schroeder's requests. *Id.* ¶ 33. In the following years, Schroeder's team competed both domestically and internationally. *Id.* ¶¶ 35–37. The team publicized its matches through notices posted on NYPD premises. *Id.* ¶ 34. Prior to its matches, the team had publicity photo opportunities with Commissioners Ward and Brown and/or with other high-ranking officers of the NYPD. *Id.* ¶ 38. On or about November 30, 1990, the team

incorporated and adopted the name "Fighting Finest, Inc." *Id.* ¶ 40.

At some point in 1990, FFI was invited to affiliate itself with the Patrolman's Benevolent Association ("PBA"), the collective bargaining agent of New York City police officers. *See* O'Leary Aff. ¶¶ 14, 17. When FFI, wishing to maintain its independence, declined PBA affiliation, James Higgins, the financial secretary of PBA, founded a separate PBA boxing team. *Id.* ¶ 19. He then prevailed upon then-Commissioner Kelly to withdraw recognition of FFI and to recognize the PBA team as the sole boxing team for New York City police officers. *Id.*; Compl. ¶¶ 41–42. On or about May 18, 1994, Schroeder received a letter from Jeremy Travis, Deputy Police Commissioner for Legal Matters, demanding that FFI cease using the NYPD shield as part of its logo or conveying in any other way that FFI's activities were associated with the NYPD. Compl. ¶ 43. Commissioner Bratton thereafter refused to participate in any photo publicity events with FFI, *id.* ¶ 45, and has refused to permit plaintiffs to post notices of upcoming FFI events in NYPD facilities, *id.* ¶ 46. Bratton has, however, afforded all of these prerogatives to the PBA team. *Id.* ¶ 47.

Traditionally, the NYPD has remained neutral on the issue of whether police athletic teams affiliate with the PBA. *Id.* ¶ 54; O'Leary Aff. ¶¶ 12, 15. Numerous police athletic teams have chosen to remain independent of the PBA, O'Leary Aff. ¶¶ 2, 8, and, with the one exception of FFI, they have not suffered adverse or differential treatment because of their independence. They are recognized by the NYPD and permitted to use the internal police communications system to publicize and promote their activities. *Id.* ¶ 2.

Plaintiffs contend that defendants' decision to withdraw recognition and support from FFI has crippled the team. "The aforesaid actions of the defendants have had the effect of curtailing the matches which can be scheduled by the FFI since notice to members of the Police Department of events by posting in police facilities and photographs with the

---

Defendant Kelly has yet to be served in this action, and has not formally joined Bratton's motion. We accordingly dismiss the complaint against Kelly *sua sponte.*

Commissioner is the method of publicity used most effectively within the Police Department to publicize events among members of the New York City Police Department." Compl. ¶ 53; *see id.* ¶¶ 55, 57. Plaintiffs further contend that by impeding their ability to maintain FFI as a viable, independent boxing team, defendants are interfering with their First Amendment right to participate in the social, athletic and charitable activities of FFI, all of which, they claim, are forms of expressive speech. *Id.* ¶ 50; Plaintiffs' Memorandum of Law, dated May 26, 1995 ("Pls.' Mem."), at 2. Defendants are also alleged to be violating plaintiffs' right of free speech and association by "compell[ing] the individually named plaintiffs to associate and [sic] participate in the PBA team...." Compl. ¶ 51. Finally, plaintiffs mount an equal protection challenge to defendants' decision to single out boxing as the one sport in which a team must be affiliated with the PBA before it can gain NYPD recognition and access to official NYPD communication channels. *See id.* ¶¶ 29, 59. Plaintiffs contend that no rational basis exists for treating FFI differently from all other police athletic teams.

## DISCUSSION

### A. *Freedom of Speech and Association*

Plaintiffs' First Amendment claim presents two discrete issues: (1) whether the impact of defendants' conduct on plaintiffs' boxing activity implicates the First Amendment; and (2) whether the impact of defendants' conduct on plaintiffs' promotional activity implicates the First Amendment.

With regard to the first issue, we conclude that plaintiffs have failed to state a First Amendment violation.

■ To begin with, we have grave doubts whether, in the context presented here, the sport of boxing is expressive activity protected by the First Amendment. Plaintiffs assert that the public participation of New York City police officers in the sport of amateur boxing conveys "the particularized message ... that police officers are individuals of character pursuing excellence and adhering to ethical standards of fair play and sportsmanship," and, further, that this particular-

ized message "is readily understood by those who view" the officers in competition. Pls.' Mem. at 9. While it is certainly true that the First Amendment protects expressive conduct as well as expressive verbalization, the Supreme Court has rejected the notion that a "limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). Rather, to determine whether an act or activity is imbued with enough elements of communication to fall within the scope of the First Amendment, a court must assess not only the intention of the would-be speaker but also the objective likelihood that the putative message will be understood by those who view the activity. *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989); *Spence v. Washington,* 418 U.S. 405, 409–11, 94 S.Ct. 2727, 2729–31, 41 L.Ed.2d 842 (1974) (per curiam). While we recognize that dance, when combined with nudity, can inexorably convey a message of eroticism, *see Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 2459–60, 115 L.Ed.2d 504 (1991), we are not convinced that a boxing match, in which police officers participate, inexorably conveys any message other than that police officers can be pugilists.

■ However, even if we assume *arguendo* that the communicative element in plaintiffs' boxing activity is enough to bring into play the First Amendment, plaintiffs have not alleged any burden on that activity which violates the First Amendment. As defendant Bratton correctly points out, the complaint does not allege that defendants have ordered FFI to disband or penalized police officers for participating in its activities. Nor does it allege that defendants have tried to hinder the advertisement of FFI through non-official channels of communication. Rather, the complaint alleges only that defendants have denied plaintiffs the most effective means of publicizing and promoting FFI's activities and permission to incorporate a police shield in the FFI logo. But we know from cases such as *Lyng v. Automobile Workers,* 485 U.S. 360, 366–68, 108 S.Ct.

1184, 1189–91, 99 L.Ed.2d 380 (1988) (government's refusal to extend food stamp benefits to striking workers does not abridge striker's right of association), and *Lincoln Union v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 530–31, 69 S.Ct. 251, 254–55, 93 L.Ed. 212 (1949) (state enforcement of open-shop law does not abridge associational rights of unions or their members despite claim that closed shop is indispensable to the right of self-organization), that conduct that makes protected forms of association and speech more difficult to achieve does not, without more, violate the First Amendment. To be actionable, the hindrance to expressive association must be direct and substantial, of the same genre as, say, exposing the members of an association to physical and economic reprisals or to civil liability because of their group membership. *Lyng*, 485 U.S. at 366–67 & n. 5, 108 S.Ct. at 1189–90 & n. 5. The conduct challenged here—an administrative decision not to subsidize the exercise of (what we are assuming to be) a fundamental right—does not exert pressure of this magnitude. *See id.* at 368, 108 S.Ct. at 1190 (acknowledging that "[s]trikers and their union would be much better off if food stamps were available," but concluding that "the strikers' right of association does not require the Government to furnish funds to maximize the exercise of that right."). We would only add that inasmuch as the defendants, on the facts alleged, have not unconstitutionally hindered plaintiffs' affiliation with FFI, they have not unconstitutionally compelled plaintiffs' association with the PBA boxing team.

We hold, then, that plaintiffs have failed to state a First Amendment claim relative to their boxing activity.

■ Plaintiffs' First Amendment claim regarding their promotional activities stands on a somewhat different footing, for the advertisement of FFI matches and activities is protected speech that has clearly been suppressed from appearing on the internal police communications system. The gravamen of plaintiffs' complaint here is not so much that as public employees, they have been denied the free speech rights guaranteed to private citizens against the government, but that the government, in the form of NYPD official-

dom, has wrongfully granted the PBA team preferential access to the use of public property. *See* Tr. at 22–23.

The question of whether the NYPD must grant equal access to the internal police communications system depends, in the first instance, on the nature of that system. The Supreme Court has established a framework for determining how First Amendment interests are to be analyzed with respect to different types of public property:

In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly ... and discussing public questions. In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.

. . . . .

A second category consists of public property which the State has opened for use by the public as a place for expressive activity.... Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum.

Public property which is not by tradition or designation a forum for public communication is governed by different standards.... In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.... Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker. These distinctions may be impermissible in a public

forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.

*Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45–46, 49, 103 S.Ct. 948, 954–56, 957, 74 L.Ed.2d 794 (1983) (internal citations and quotations omitted).

Internal police channels of communication are hardly "streets" or "parks," and plaintiffs have alleged nothing to indicate that defendants have taken steps to designate the communications system as a place for expressive activity by the public at large. On the basis of what is stated in the complaint, then, the internal communications system of the NYPD must be deemed a non-public forum.

Nor have plaintiffs alleged any fact indicating that defendants have denied FFI access to the internal communications system because defendants disagree with or wish to discourage the viewpoint espoused by FFI (assuming that plaintiffs' activities do in fact express a viewpoint).

All of which brings us to the crux of the matter: have plaintiffs alleged anything in their complaint to suggest that the preferential access accorded the PBA team is unreasonable in light of the purposes that the internal communications system serves? At oral argument on Bratton's motion, the Court observed that there was no indication in the complaint or in Bratton's submissions as to why the attributes of official authorization had been taken away from FFI. Tr. at 5, 8. Counsel for Bratton responded that plaintiffs' allegations do suggest an explanation: the sponsoring organization of the rival boxing club is the PBA, the collective bargaining agent for New York City police officers, *id.*— the implication being that defendants Kelly and Bratton sought to curry favor with PBA financial secretary James Higgins and withdrew recognition and support from FFI in order to maintain good labor relations. Counsel for plaintiff did not dispute this explanation, but, quite the contrary, embraced it as evidence that the NYPD's disavowal of FFI was a political matter having "nothing to do with any valid purpose of the police department or of the PBA even.... It is [all about] a particular individual...." *Id.* at 26; *see id.* at 25–28.

Politics is hardly pure or pristine, but it is not for that reason irrational. It cannot be doubted that the PBA, as the collective bargaining agent of New York City police officers, is an entity that is integral to the smooth running of the NYPD. And because the PBA is integral to the smooth running of the NYPD, efforts on the part of NYPD commissioners to maintain good relations with the PBA cannot be deemed irrational or unreasonable, even if they do entail acceding to the arguably inappropriate desire of a PBA official to have a police boxing team of his own. Of course, if the desire to have one's own boxing team were founded on a reason that was unconstitutional in and of itself—say, a desire to form an all-white team—this would be a different case. But there is no indication in anything plaintiffs have alleged that such an independently unconstitutional agenda motivated James Higgins to seek the revocation of FFI's officially-recognized status.

There is no denying that this is a harder case than *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, supra. In *Perry*, a school board had given access to the interschool mail system to the exclusive bargaining representative of the teachers of the school district, but had denied access to plaintiff, a rival teachers union. The Supreme Court held that the preferential treatment given the bargaining representative was constitutional under the First Amendment because it enabled the bargaining representative to perform its official obligations effectively. 460 U.S. at 50–51, 103 S.Ct. at 958. "[E]xclusion of the rival union may reasonably be considered a means of insuring labor peace within the schools. The policy 'serves to prevent the District's schools from becoming a battlefield for inter-union squabbles.'" *Id.* at 52, 103 S.Ct. at 959 (quoting *Haukedahl v. School District No. 108*, No. 75–C–3641 (N.D.Ill., May 14, 1976)). Here, in contrast, there is no reason to think that the exclusion of FFI's advertisements from the internal police communications system enables the PBA to perform more effectively as a collective bargaining agent. Boxing plainly has

nothing directly to do with the PBA's official duties.

However, as noted above, the PBA plays an important role in the official business of the NYPD. To the extent that FFI's exclusion from the communications system heightens the prestige and profile of the PBA, it must be deemed to serve the official interests of both the PBA and the NYPD. And this fact is enough—as a matter of law on the facts alleged—to justify giving the PBA preferential access to the non-public forum at issue here.

We conclude, then, that plaintiffs have failed to state a First Amendment claim relative to their promotional activities.

### B. *Equal Protection*

█ Having concluded that plaintiffs fail to state a claim under the First Amendment, we need not test by strict scrutiny defendants' decision to single out boxing as the one sport in which a police team must be affiliated with the PBA in order to receive official sanction. *See Perry,* 460 U.S. at 54, 103 S.Ct. at 959–60 (strict scrutiny not applied when government action does not impinge upon a fundamental right protected by the Constitution). To satisfy the Equal Protection Clause, defendants' decision need only rationally further a legitimate state purpose.

There is no indication in the complaint that a rival PBA team exists for any of the many police athletic teams that are non-PBA affiliated. A rival PBA team does exist, of course, for FFI. Given this fact, and our conclusion above that accommodating an official of the PBA is a rational and reasonable strategy on the part of an NYPD commissioner, we reject plaintiffs' claim that they have been arbitrarily and irrationally singled out for differential treatment.

### CONCLUSION

For all of the foregoing reasons, we grant defendant Bratton's motion to dismiss the complaint for failure to state a claim on which relief can be granted. We dismiss the complaint as against both defendants.

SO ORDERED.