**A.B.C. HOME FURNISHINGS, INC., d/b/a ABC Carpet & Home, Plaintiff,**

v.

**TOWN OF EAST HAMPTON, East Hampton Town Board, Catherine Lester, individually and in her official capacity as Town Supervisor, Thomas Knobel, individually and in his capacity as Councilperson, Peter Hammerle, individually and in his capacity as Councilperson, Nancy McCaffrey, individually and in her capacity as Councilperson, and Leonard Bernard, individually and in his capacity as Councilperson, Defendants.**

No. CV 96–3456 (ADS).

United States District Court,
E.D. New York.

Dec. 14, 1996.

Grossman & Birnbaum by Stephen Grossman, Sag Harbor, New York, for Plaintiff.

Cahn Wishod & Lamb, LLP by Richard C. Cahn, Toby Holbreich, Melville, New York, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from the allegations of the plaintiff, A.B.C. Home Furnishings, Inc., d/b/a ABC Carpet & Home (the "plaintiff" or "ABC") that the defendants, the Town of East Hampton (the "Town"), the East Hampton Town Board (the "Town Board"), the Town Supervisor, Catherine Lester ("Lester"), and the Town Councilpersons, Thomas Knobel ("Knobel"), Peter Hammerle ("Hammerle"), Nancy McCaffrey ("McCaffrey") and Leonard Bernard ("Bernard," collectively the "defendants"), unlawfully revoked a permit necessary to have a sale in a certain location within the Town of East Hampton, in violation of ABC's constitutional rights. The defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Complaint arguing that the plaintiff has failed to allege a claim upon which relief may be granted. ABC opposes the motion, contending that it has adequately set forth its claims and arguing in the alternative, that in the event that the motion to dismiss is granted, that ABC should be given leave to amend its Complaint.

## I. Background

The following facts are taken from the Complaint. ABC is a New York corporation, located in Manhattan, that sells home furnishings. The Town of East Hampton is a municipality located in Suffolk County. The Town's Board is the Town's governing body. Catherine Lester is the Town Supervisor and Thomas Knobel, Peter Hammerle, Nancy McCaffrey, and Leonard Bernard are Councilpersons who sit on the Town Board.

In the spring of 1996, ABC met with representatives of an entity referred to as Podell House, a residential program offering family mediation services and safe temporary shelter for runaway and homeless youths on the East End of Long Island. The purpose of the meeting was to discuss furnishing Podell House with ABC merchandise and a cash gift. Ultimately, it was agreed that Children's House, Inc., Podell House's parent entity would make arrangements for ABC to hold a cocktail party and conduct a three day sale of merchandise at Dune Alpin Field in the Town of East Hampton (the "Event"), and that in exchange ABC would donate a portion of the proceeds of the three day sale to Podell House in an amount guaranteed at $20,000. As part of the agreement, ABC would also donate certain furnishings, with a value of $5,000 to Podell House.

The arrangements were made with the aid of LBS Productions which is managed by Linda B. Shapiro. With Shapiro's assistance, Councilperson Knobel was contacted and the Event was scheduled for July 12–14, 1996.

On April 25, 1996, Estelle A. Fox, ABC's Project Director, wrote a letter to Councilperson Knobel reiterating the company's plans to make financial contributions in the total amount of $25,000, and advising that the advertising budget would be "significant." On May 6, 1996, Shapiro, sent Knobel a template for advertising purposes. On May 8, 1996, Shapiro completed the application for a Town permit for the Event. The application stated the purpose of the event as follows: "To raise funds for Podell House, Friday p.m.—July 12—cocktail party sale—Sat.—Sun. sale."

The Town's printed application form stated:

In consideration for the issuance of the permit sought herein, without charge or fee paid to the Town of East Hampton, the applicant hereby consents and agrees that the Supervisor of the Town of East Hampton, upon the report and recommendation of the Chief of Police of the Town and/or the Acting Chief of Police of the Town, without notice or hearing, may revoke such permit granted to this applicant.

After presentation of the application to the members of the Town Board, a meeting was held on May 17, 1996 at which Councilperson Knobel presented Resolution # 560, which was seconded by Councilperson Bernard, and provides as follows:

RESOLVED, pending receipt of the approved tent permit from the EH Town Fire Marshal's Office the application of Children's House, Inc. is hereby approved; and be further

RESOLVED, the Town Clerk is hereby directed to forward a copy of this resolution to Linda Shapiro, LBS Productions, PO box 1048, East Hampton, N.Y. 11937; Ken Scott, Superintendent, Recreation & Parks; David DiSunno, Chief Fire Marshal; Tom Scott, Chief of Police and Glen Stonemetz, EH Village Chief of Police.

Resolution # 560 was unanimously passed. According to ABC, in reliance of the ratification of Resolution # 560, the following preparation was undertaken for the Event:

1. A tent was rented and plans to transport it from Rhode Island were made and contracted for;

2. Lodging for ABC employees to work at the event was contracted for, primarily by arranging for approximately 60 hotel rooms;

3. Advertising was disseminated to attract New Yorkers and citizens from other states to the Event;

4. Goods were bought in interstate commerce for sale at the Event;

5. Telecommunications arrangements were made for the site including computer hook-ups for credit card transactions;

6. Trash pick-up and sanitation services were contracted for;

7. Portable toilets and security personnel were contracted for;

8. Valet parking was obtained;

9. Electrical hook-ups worth approximately $20,000 were contracted for;

10. Outdoor furniture was rented;

11. Transportation of merchandise was planned; and

12. Labor costs and fees for LBS Productions were incurred.

On June 21, 1996, the Town Board passed Resolution # 656 rescheduling the time of the Event on July 12, 1996 from 6:00 p.m.—10:00 p.m. to 1:00 p.m.—8:00 p.m. and affirming Resolution # 560 in all other respects. On July 3, 1996, a tent permit was issued by the Town's Chief Fire Marshal and advertising was placed in local newspapers, the New York Times, New York Magazine and Quest Magazine.

At some point, local merchants began to object to the permits issued for the event. ABC pleads, upon information and belief, that East Hampton Business Alliance President, Sherry Wolfe, wrote a letter to Supervisor Lester opposing "a tent sale under the thin veil of charity" and demanding revocation of the permits. Further, Mariana Van, on behalf of the East Hampton Chamber of Commerce, advised the Town Board that the Chamber was "tired of working to promote local businesses while the town let in outsiders to reap the benefits." As a result of these complaints Councilperson Knobel began to express his concern that the sale was not being run as a charity event.

In response to these concerns, on June 28, 1996 Evan Cole, ABC's president, wrote a letter to Councilperson Knobel expressing a desire to address any concerns that the Town might have with respect to the Event so that any problems could be resolved amicably. Knobel did not respond to the letter. Also on June 28, 1996, LBS productions issued a press release stating that a portion of the proceeds of the sale were going to Podell House.

On July 5, 1996, the Town Board passed Resolution # 680 which revoked the permit for the Event on the ground that the Event was being run as a commercial enterprise rather than a charity event and that the land where the sale was to be held was zoned for residential rather than commercial use. Accordingly, permitting the sale to go forward would be in violation of the Town zoning ordinance.

According to the Complaint, neither ABC nor Children's House, Inc. was given notice of the proposal of Resolution # 680 or an opportunity to respond. Further, the Town Board refused to have any discussion prior to the vote despite the requests of ABC's counsel. As a result of the passage of Resolution # 680, the plaintiff was forced to cancel the Event and place advertising in local and regional newspapers explaining the cancellation to the public.

Based on the foregoing, ABC alleges six causes of action for violations of its constitutional rights to: (1) free speech under the First Amendment; (2) free expression under Article I, section 8 of the New York State Constitution; (3) due process under the Fifth Amendment; (4) proper enforcement of Chapter 39 of the Town Code; (5) free assembly under the First Amendment; and (6) equal protection under the Fourteenth Amendment. The defendants move to dismiss the Complaint arguing that the plaintiff has failed to state a cause of action for which relief can be granted. ABC opposes the motion, maintaining that its claims have been adequately pled. In the alternative, the plaintiff states that if any portion of the defendants' motion is granted, that it be given leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a).

## II. *Discussion*

### A. *Rule 12(b)(6) standard*

A complaint is to be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *Allen v. West Point–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations

in the complaint must be taken as true," *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

### B. *The defendants' motion*

██ At the outset, the Court notes that the defendants have submitted affidavits of Councilperson Thomas Knobel, Town Clerk of East Hampton, Frederick Yardley, and Deputy Town Clerk, Richard Whalen, together with exhibits in support of their motion. However, in order to consider matters extraneous to the pleadings, the Court must convert the motion to one for summary judgment. *See Fonte v. Board of Managers of Continental Condominium*, 848 F.2d 24, 25 (2d Cir.1988). Because the Court believes that it would be premature to consider a motion for summary judgment at this early stage in the proceedings, and, in any event, could not do so without notice to the parties and a further opportunity to respond, the Court will not consider the defendants' supporting documents.

Having determined that only the pleadings will be considered in adjudicating the defendants' motion, the Court now turns to the merits of the movants' arguments.

### 1. *Standing*

██ Initially, the defendants argue that ABC lacks standing to bring this lawsuit.

It is well settled by now that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (footnote, citations, and internal quotation marks omitted); *see also, e.g., Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

*United States v. Hays*, —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). When making a section 1983 claim, a plaintiff must generally assert its own interests as opposed to those of third parties. *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996), citing, *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). However, this requirement has been given a sufficiently broad interpretation in some circumstances to permit a litigant to assert the rights of another. *See, e.g., Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (seller permitted to assert right of customers to purchase beer); *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 242–43, 103 S.Ct. 2979, 2982–83, 77 L.Ed.2d 605 (1983) (hospital may assert rights of patient for payment of recovery costs by city); *Carey v. Population Serv. Int'l*, 431 U.S. 678, 682–85, 97 S.Ct. 2010, 2014–16, 52 L.Ed.2d 675 (1977) (corporation selling contraceptive devices may assert right of potential customers to purchase items).

Particularly relevant to this lawsuit is *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). In *Munson*, the plaintiff, a professional for profit fundraiser filed suit seeking a declaratory judgment that a Maryland statute, which prohibits charitable organizations from paying more than 25% of the amount raised for expenses violated its free speech and free assembly rights. Violation of the statute could result in criminal prosecution.

The Supreme Court, recognizing that Munson was not charity, and did not claim that its constitutional rights would be infringed, nevertheless held that Munson had standing to bring the action. In reaching this conclusion, the court noted that there was a sufficiently concrete case or controversy because of threatened prosecution under the statute and a "sufficient injury-in-fact" and because Munson could "reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Id.* at 956–58, 104 S.Ct. at 2846–48. "The activity sought to be protected is at the heart of the business relationship between Munson and its clients, and Munson's interests in challenging the statute are completely consistent with the First Amendment interest of the charities it represents." *Id.* at 958, 104 S.Ct. at 2848. The fact that the charity might have been able to bring the suit itself did not alter this conclusion. Accordingly, it was held that Munson had standing to bring the action.

■ Applying these standards the Court finds that ABC has standing to maintain this lawsuit. The plaintiff has clearly alleged an injury-in-fact, namely the time and expense invested in producing the Event, all in reliance on the fact that the proper permits were duly issued as required under local law. Further, there is a clear causal connection between the resources invested after the permit was granted, and the subsequent injury directly resulting from the permit being revoked. Finally, the Court finds that a judgment in favor of ABC will make the company whole in the form of damages.

In reaching this conclusion, the Court rejects the defendants' argument that Children's House, Inc. "is the proper party to seek judicial relief." Like the plaintiff in *Munson*, ABC is claiming constitutional violations, including an abridgment of its free speech rights, and has sufficiently alleged its claims to persuade the Court that it will adequately frame the issues and present them with sufficient adversarial zeal. *See Munson*, 467 U.S. at 954–58, 104 S.Ct. at 2845–48.

### 2. Commercial speech and freedom of assembly

■ The defendants next argue that ABC's claims for violations of its free speech and assembly rights should be dismissed for failure to state a claim. With respect to commercial speech, the Supreme Court has afforded First Amendment protection to truthful advertising. *See 44 Liquormart, Inc. v. Rhode Island,* — U.S. —, —, 116 S.Ct. 1495, 1504–05, 134 L.Ed.2d 711 (1996), citing, *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

> So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable.

*Virginia Pharmacy Bd.,* 425 U.S. at 765, 96 S.Ct. at 1827. However, the Supreme Court has also recognized that commercial advertising may be regulated more freely than other forms of protected speech, such as where the state requires commercial messages to appear in a certain form or include additional information as are necessary to avoid deception. *44 Liquormart,* — U.S. at —, 116 S.Ct. at 1505–06.

■ In considering a non solicitation regulation, the Court must first look to whether the speech at issue concerns a lawful activity which is not misleading. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *New York State Association of Realtors, Inc. v. Shaffer,* 27 F.3d 834, 841 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994). Next the Court must consider whether the asserted governmental interest is substantial. *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351; *Shaffer,* 27 F.3d at 841. If both inquiries are answered in the affirmative, the Court must determine whether the regulation directly advances the governmental interest asserted and whether the regulation is

more extensive than necessary to serve that interest. *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351; *Shaffer,* 27 F.3d at 841.

In support of its commercial speech claim, ABC alleges:

51. By voting in favor of Resolution # 680 which revoked Resolutions # 560 and # 656, and by basing such revocation upon the content of the commercial advertising which ABC placed in local and regional newspapers and magazines, the TOWN OF EAST HAMPTON, EAST HAMPTON TOWN BOARD, LESTER, KNOBEL, HAMMERLE, McCAFFREY AND BERNARD, knowingly and intentionally violated 42 U.S.C. § 1983 by sanctioning ABC for exercising its freedom of commercial speech as guaranteed by the First Amendment. . . .

■ Applying the standards set forth above, the Court finds that the plaintiff fails to allege a violation of its commercial free speech rights. According to ABC, the defendants revoked its permit to hold the Event after receiving a number of complaints, some of which were made allegedly in response to certain advertising. However, the advertising was never regulated in any way, nor were any other communications made by the plaintiff. Rather, the Town's revocation of the permit demonstrated an effort to regulate the Event, *i.e.,* the activity underlying the speech, not the speech itself. As a result the First Amendment is not implicated. *See, e.g., Fighting Finest, Inc. v. Bratton,* 898 F.Supp. 192, 196 (S.D.N.Y.1995), *aff'd,* 95 F.3d 224 (2d Cir.1996) (Police Department's decision to withdraw support for an athletic group, thereby preventing them advertising with the imprimatur of the Department, does not rise to a First Amendment violation).

■ Similarly, the plaintiff's free assembly claim fails to allege a violation of the First Amendment. As with ABC's free speech claim, the defendants' revocation of the permit does not constitute an attempt by the Town to regulate the right to assemble. Rather it reflects the defendants efforts to control the plaintiff's commercial enterprise in East Hampton. *Id.* (holding that plaintiff failed to allege claim for violation of free speech and free association). Indeed, a contrary conclusion would be tantamount to finding that any regulation of commercial activity involving a buyer and a seller would implicate the First Amendment, an outcome the Court declines to support. Accordingly, the defendants' motion to dismiss the plaintiff's First Amendment free speech and free assembly claims is granted.

3. *Freedom of speech under New York constitution*

Having dismissed the plaintiff's First Amendment free speech and free assembly claims, the Court now turns to ABC's free speech cause of action brought pursuant to the New York State Constitution. Article I, Section 8 of the New York State Constitution provides:

Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or the press. . . .

New York Const. art. I, § 8. Although the New York courts have noted that " 'the protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment,' " *Time Square Books, Inc. v. City of Rochester,* 223 A.D.2d 270, 645 N.Y.S.2d 951, 955 (4th Dep't 1996), citing, *O'Neill v. Oakgrove Constr.,* 71 N.Y.2d 521, 529 n. 3, 528 N.Y.S.2d 1, 4 n. 3, 523 N.E.2d 277, 280 n. 3 (1988) (other citations omitted), the Court need not resolve the distinction between free speech claims brought under the New York and federal constitutions at this time. Even when treating the Complaint under the generous standard of Fed.R.Civ.P. 12(b)(6) and the New York Constitution, ABC has failed to establish its state law free speech claim.

■ As stated above, the Court finds that defendants' ratification of Resolution # 680, which revoked the permits previously issued, did not constitute a regulation of the plaintiff's speech. There are no allegations that the defendants attempted to prevent or control advertising, or acted in a way that might result in the chilling of protected speech.

Rather, as stated above, the Complaint claims that the defendants attempted to regulate a three day commercial sale within the Town of East Hampton, a government action, which even if unlawful, would not implicate Article I, Section 8 of the New York Constitution. Accordingly, the defendants' motion to dismiss ABC's state law free speech claim is granted.

### 4. *Due process*

The defendants further move to dismiss the plaintiff's due process claim. At the outset, the Court recognizes that the Complaint alleges that ABC's substantive and procedural due process rights have been violated. To facilitate the analysis the Court considers each prong separately.

#### a. *Substantive due process*

 In one of the few successful substantive due process cases tried before this Court, the Second Circuit stated in *Walz v. Town of Smithtown*, 46 F.3d 162 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995):

When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis, which has its origins in the Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of the analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit), *cert. denied*, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem*, 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in certificate of occupancy); *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant

possessed property interest in permit to use property as automobile junkyard).

*Walz*, 46 F.3d at 167–68. In order to establish a property interest sufficient to support a substantive due process claim, the plaintiff must establish a " 'legitimate claim of entitlement'. to the benefit in question." *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996), quoting, *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir.1995) (internal citation omitted). If there is an adequate property interest, ABC must demonstrate that the defendants acted in an arbitrary or irrational manner depriving the plaintiff of that interest. *See id.* at 52. The key to determining the existence of a property interest is the extent to which the deciding authority may exercise *discretion* in reaching its decision, rather than on the estimate of the likelihood of a certain decision. *Crowley*, 76 F.3d at 52. If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a superseding body to local administrative agencies. *Id.*

 Under New York law, a vested right in a permit can be acquired where a "landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expense to further the development." *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 643 N.Y.S.2d 21, 24, 665 N.E.2d 1061, 1064 (1996) (collecting cases). However, neither the issuance of a permit, nor the landowner's substantial improvements and expenditures, standing alone, will establish the right. *Id.* 643 N.Y.S.2d at 24–25, 665 N.E.2d at 1064–65 (internal citations omitted). The landowner's actions relying on a valid permit must be so substantial that the municipal action "results in serious loss rendering the improvements essentially valueless." *Id.* 643 N.Y.S.2d at 25, 665 N.E.2d at 1065. In general, whether the plaintiff has sufficiently committed the land to the use authorized in the permit is a question of fact. *Id.*

 Applying these standards, the Court finds that ABC has failed to allege a property interest. In reaching this conclusion the Court need only look to the governing provisions of the East Hampton Town Code

("Town Code") and the plaintiff's permit application. Permit applications for "large assemblage of persons" are governed by Chapter 39 of the Town Code. Section 39–4 provides for the "denial or revocation of permit[s]:"

> A. The Town Clerk *may* deny or revoke any such permit if there is a violation of any ordinance of the Town of East Hampton or law of the State of New York or of the United States of America. The Town Clerk also may deny the permit for the following reasons:
>
> (1) If any time during the preceding twelve (12) months a permit for a large assemblage of persons in the name of the applicant or at the premises described in the application has been revoked.
>
> (2) If the permit application is not complete or does not specify adequate controls to assure compliance with provisions of this ordinance.
>
> (3) If the Town Clerk finds false information in [sic] application.

East Hampton, Town Code § 39–4(A) (emphasis added). The permit application, which was filed by Children's House, Inc. states:

> In consideration of the issuance of the permit sought herein, without charge or fee paid to the Town of East Hampton, the applicant hereby consents and agrees that the Supervisor of the Town of East Hampton, upon report and recommendation of the Chief of Police of the Town and/or the Acting Chief of Police of the Town, without notice or hearing, *may* revoke such permit granted to this applicant.

Compl.Exh. 3 (emphasis added).

Both the Town Code, and the permit application expressly provide that the permit *"may"* be revoked under certain circumstances and according to the permit application signed by the plaintiff, without notice or a hearing. The signatory of the application is deemed bound by its terms. The Court finds, as a matter of law, that this permissive language, given its plain meaning, provides the defendants with sufficient discretion in the determination as to whether to revoke a permit to defeat ABC's claim of a property interest in the Children's House, Inc. permit. Accordingly, the defendants' motion to dismiss ABC's substantive due process claim is granted.

In reaching this conclusion, the Court notes that neither the vested rights nor estoppel doctrines under New York law will alter this conclusion. As set forth above, vested rights in a permit can be acquired where there is substantial improvement to property and municipal action results in a serious loss. *Town of Orangetown,* 643 N.Y.S.2d at 24–25, 665 N.E.2d at 1064–65. Substantial improvements and expenditures, standing alone, will not be enough. *Id.* In this case, ABC alleges only the expenditure of time and money in preparing for the Event. There are no allegations of improvements to land. *Cf. Town of Orangetown,* 643 N.Y.S.2d at 24, 665 N.E.2d at 1064 (recognizing applicability of the doctrine where landowner cleared land to construct a $3 million, 184,000 square foot, industrial building and spent over $4 million on improvements and building before work was halted); *see also Ellington Constr. v. Zoning Bd. of Appeals,* 152 A.D.2d 365, 549 N.Y.S.2d 405 (2d Dep't 1989) (Spatt, J.P., Sullivan, Harwood, Balletta, JJ.), *aff'd,* 77 N.Y.S.2d 114, 564 N.Y.S.2d 1001, 566 N.E.2d 128 (1990) (applying vested rights doctrine where there had been substantial expenditures and portion of land had been irrevocably granted to town as park in reliance on earlier zoning ordinance); *Putnam Armonk, Inc. v. Town of Southeast,* 52 A.D.2d 10, 382 N.Y.S.2d 538, 540 (2d Dep't 1976) (application of vested rights doctrine is appropriate where construction on tract of land by landowner including laying of waterworks and drainage system, and establishment of road grid had commenced). Here, significantly, ABC is not the landowner. While the Court is unwilling to state that the doctrine applies only to landowners, in this case, ABC's interest in the permit and the land is extremely limited, and its loss is stated only in monetary terms. Accordingly, even after considering that the issue of vested rights is generally one of fact, the Court finds that the Complaint fails to allege sufficient facts to invoke the vested rights doctrine as a matter of law.

 Further, the doctrine of equitable estoppel is generally not applicable to municipal agencies. *See E.F.S. Ventures Corp. v. Foster,* 71 N.Y.2d 359, 369, 526 N.Y.S.2d 56, 61, 520 N.E.2d 1345, 1350 (1988); *Parkview Assocs. v. City of New York,* 71 N.Y.2d 274, 282, 525 N.Y.S.2d 176, 178, 519 N.E.2d 1372, 1373–74 (1988). Seeing no reason to depart from this settled rule in this instance, the Court declines to apply the doctrine of estoppel in this case. Indeed, a contrary conclusion would be tantamount to permitting an end run around the more rigorous standards set forth above under the vested rights doctrine.

### b. *Procedural due process*

 ABC also makes a claim for violation of its procedural due process rights. However, as the Second Circuit recognized in *Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994), complaints regarding lack of notice and failure to comply with municipal requirements are not actionable where there are no protectible rights at stake. *Id.* at 193, citing, *Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir.1990). Indeed, where local law makes the official act at issue discretionary, a plaintiff lacks a sufficient property right which would be entitled to procedural due process protection. *Gagliardi,* 18 F.3d at 193, citing, *RR Village Ass'n, Inc. v. Denver Sewer Corp.,* 826 F.2d 1197, 1201–02 (2d Cir. 1987). Accordingly, because the Court has already determined that ABC lacks a sufficient property interest in the permit, its procedural due process claim cannot be maintained and the defendant's motion to dismiss this cause of action is granted.

### 5. *Equal protection*

 The defendants further move to dismiss the plaintiff's equal protection claim. In order to state a cause of action under the equal protection clause, the plaintiff must allege that:

(1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or ma-

licious or bad faith intent to injure a person.

*Crowley,* 76 F.3d at 52–53; *see also Zahra,* 48 F.3d at 683; *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992). Recent Second Circuit decisions have been careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim. *See, e.g., Zahra,* 48 F.3d at 684 (recognizing that even where the plaintiff presents evidence of selective treatment, failure to demonstrate malice or bad faith requires dismissal of the claim).

 Applying these standards, the Court finds that the plaintiff's equal protection claim is insufficiently pled. According to the Complaint, ABC obtained a permit consistent with the requirements of the East Hampton Town Code. The permit was then subsequently revoked. As a result, the plaintiff contends that its constitutional rights were violated as to equal protection. However, there are no allegations regarding similarly situated entities who were treated differently. In fact, there are no allegations regarding similarly situated entities at all. Accordingly, the defendants' motion to dismiss the plaintiff's equal protection claim, pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

### 6. *Remaining claims*

 Finally the defendants move to dismiss ABC's remaining cause of action, Count IV, which is entitled "Violation of 42 U.S.C. § 1983 by the Town Board's revocation of a validly issued public gathering permit in violation of East Hampton Town Code Chapter 39 and the terms and conditions of the application." Count IV apparently alleges that ABC's constitutional rights were abridged because the defendants violated Town Code section 39–4 by revoking the permit. Without belaboring the analysis, the Court finds that these allegations are insufficient to state a claim of constitutional dimension. Although this claim makes reference to a "property interest" and "commercial speech" and "financial and reputational injuries," the Court is unable to discern any meaningful cause of action which has not already been addressed above. Accordingly, the defen-

dants' motion to dismiss the plaintiff's remaining cause of action is granted.

### 7. *Qualified immunity*

In passing, the Court recognizes that the defendants have moved to dismiss the claims against the individual defendants on the basis of qualified immunity. However, because the Court has already granted the defendants' motion in its entirety on other grounds, this argument need not be considered.

### C. *ABC's motion to amend the Complaint*

As stated above, ABC moves for leave to amend the Complaint in the event the defendants' motion is granted. Fed.R.Civ.P. 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Zahra*, 48 F.3d at 685; *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir.1993). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Zahra*, 48 F.3d at 685; *Block*, 988 F.2d at 350 ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing of prejudice or bad faith.").

Despite these liberal standards, the plaintiff's motion to amend is denied with one exception. Having reviewed the Complaint in detail, for the reasons set forth above, the Court finds that granting ABC permission to replead would be futile. The plaintiff's reliance of its free speech rights is misplaced. Taking the allegations contained in the Complaint as true, the defendants revoked the plaintiff's permit under a Town Code provision within the express language contained in the permit application. There was no activity which would constitute an effort to control free speech or assembly. Similarly, the due process claims fail because the plaintiff would be unable to establish the requisite property interest. Count IV, as stated above does not state a cognizable constitutional claim of any kind.

Indeed, the only cause of action which may not be futile is the equal protection claim. If the plaintiff is able to allege that similarly situated entities were treated differently, naming such entities, and that it was treated differently as a result of malice, bad faith or intentional discrimination, ABC could allege an equal protection claim sufficient to pass Rule 12(b)(6) muster. Accordingly, the plaintiff's motion for leave to amend the Complaint pursuant to Fed.R.Civ.P. 15(a) is granted in part and denied in part, and the plaintiff is granted leave to replead its equal protection claim.

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion to dismiss the Complaint in its entirety, pursuant to Fed.R.Civ.P. 12(b)(6) is granted; and it is further

ORDERED, that the plaintiff's motion for leave to amend the Complaint is granted only to the extent that the plaintiff is granted thirty days from this date to file an amended complaint alleging a cause of action under 42 U.S.C. § 1983 and the equal protection clause of the United States Constitution.

SO ORDERED.